## ARGUED AND DETERMINED

#### IN THE

# SUPREME COURT OF ARKANSAS,

#### AT THE

## DECEMBER TERM, 1865, AND JUNE TERM, 1866.

———————•◦•———————

## RISON ET AL. VS. FARR.

Legislation is the exercise of sovereign power; but that power is defined to a certainty by the written constitutions of the several states, which determine the extent and limit of the powers delegated to the government and retained by the people.

The constitution of this state is the supreme law of the land, under the constitution of the United States; and is of binding force and obligation upon all departments of the government, and assigns the sphere within which each must act, and establishes bounds beyond which neither can go.

The courts of justice have the right, and are in duty bound, to test every law by the constitution as the fundamental and paramount law of the land, and to declare every act of the legislature contrary to the true intent and meaning of the constitution null and void, and of no effect whatever.

Section 2, *Article* 4, of the constitution of this state, fixes the qualifications and determines who shall be deemed qualified voters in this state, in direct, positive and affirmative terms, and these qualifications cannot be added to by legislative enactment.

12

A law requiring that the voter shall swear to support the constitution of the United States, does not restrict the right to vote, adds nothing to the qualifications required by the constitution, requires nothing more than the voter is required by law to do, and is free from the objections of unconstitutionality, and is a valid law.

But to add to the qualifications prescribed by the constitution—to require that the citizen shall swear that he has not done a specified act—that he shall purge himself by oath, of all crimes or any particular crime; otherwise, to deprive him of the elective franchise, is not within the powers delegated to the legislature; and therefore, so much of the 6th section of the act approved May 31st, 1864, entitled "An Act to provide for the manner of holding elections," as prescribes such oath as a pre-requisite to voting, is directly in conflict with section 2, article 4, of the constitution, and void.

The rights and privileges of the citizen cannot be taken away by legislative enactment, directly or indirectly, or otherwise than by due process of law, that is, by the judgment of a court of competent jurisdiction.

The pardon of the President of the United States relieves the person pardoned from all penalties attached to the specified act, and restores him to his former rights and privileges.

A plea bad in part is bad for the whole.

*Error to Pulaski Circuit Court.*

Hon. LIBERTY BARTLETT, Circuit Judge.

R. C. NEWTON, for plaintiffs.

In construing the constitution in reference to the qualifications of electors, the intention of the convention may well be inquired into ; and the intention of the convention not to confine, absolutely, the qualifications to those enumerated in the constitution may well be inferred from the fact that, in an election directed by the convention, other qualifications were prescribed. *Sec. 2, article IV, State Constitution.* Also, *Schedule to Constitution, sec. 1.*

It is submitted that all persons proscribed by the act—(*Pamph. Acts*, 1864, *p.* 48,) had voluntarily renounced their allegiance to the United States ; and had ceased to be citizens thereof; and were not therefore, qualified electors under the state.constitution.

But if the law be unconstitutional, still the ministerial officers

were bound to conform to the provisions of the act of the legislature, and are not responsible in damages to the plaintiff—the act of the legislature being presumed to be valid until pronounced unconstitutional by the proper tribunal.

CLARK, WILLIAMS & MARTIN and ENGLISH & WILSHIRE, for defendant.

The constitution, by article III, section 2, having fixed the qualifications of electors, it is not within the power of the legislature to add to or diminish those qualifications. When the requirements of the constitution are passed over, there is no limit to the power of the legislature to prescribe additional qualifications.

That the framers of the present constitution, which was adopted in the midst of the rebellion, did not intend to invest the legislature with the power of adding to the qualifications of electors the provisions of the *test oath* pleaded in defence, is clearly apparent from *sec.* 12, *art. I V*, requiring the exclusion from the *right of suffrage, etc.*, of persons guilty of certain crimes. But before the vote of any one can be legally rejected because of the commission of crime, he must have been duly convicted according to the forms of law. *Amend. Con. U. S., art. V*; 10*th and* 14*th secs., bill of rights*; *sec.* 8, *art. VII, Cons.* A man can be deprived, criminally, of his property, liberty or franchises only by indictment, etc., and trial by jury. It cannot be done by mere act of the legislature, or by test oaths. 1 *Kent's Com.*, 12; 2 *ib.*, 13; *Smith on Cons. & Stat. Law*, 722, *Taylor vs. Porter*, 4 *Hill R.*, 145; *Coke's Inst.*, 45–50; 10 *Yerg.*, 59; 3 *Story on Cons.*, 264–661.

The test oath for the refusal to take which the defendant was deprived, by the judges of election of his right to vote, contains not only a provision that he will support the constitution of the United States, to which there is no objection; but also, that he has not committed acts which would constitute a crime against the United States; for which he can only be held responsible by criminal prosecution in the courts of the United States; and also

that he has not committed an act, which would be a crime against the state, and for which he can only be punished by the laws of the state by a criminal prosecution in her court.

That the act under which the justification is relied on, is palpably in conflict with the constitution of the state and null and void, and should have been so treated by the judges of election, we most respectfully submit, does not admit of a doubt.

An act of the legislature in contravention of the constitution is no law at all, and furnishes no justification to any officer or individual for his conduct. 1 *Cranch.*, 175; 2 *Dallas*, 309.

Mr. Chief Justice YONLEY delivered the opinion of the court.

This was an action on the case, brought by the defendant in error against the plaintiffs in error in the Pulaski circuit court, at the September term, A. D. 1865.

The declaration alleges that John W. Rison, Richard Bragg and Gilbert Knapp were, on the 9th day of October, A. D. 1865, at the county of Pulaski, duly appointed, qualified and acting judges of an election held according to law, at the market-house precinct, in the city of Little Rock, in the county of Pulaski, on said 9th day of October, A. D. 1865, for a member of the 39th congress of the United States, in and for the second congressional district of Arkansas : and that, after the polls had been duly opened for the reception of votes, Farr, the plaintiff below, being a free white male citizen of the United States, and a citizen of the state of Arkansas, more than six months next before said election, over the age of twenty-one years, and a resident of the county of Pulaski aforesaid, and having taken and subscribed the amnesty oath prescribed in and by the proclamation of Andrew Johnson, president of the United States, bearing date the 29th day of May, A. D. 1865, presented himself before the defendants below, while acting as such judges of election as aforesaid, and offered to vote for Lorenzo Gibson, one of the candidates for representative, from the second congressional district; but that the defendants below wilfully and contrary to law,

refused to permit him to vote at said election, whereby he was illegally deprived of the exercise of the elective franchise guarantied to him by the constitution of the state of Arkansas as a citizen thereof and a resident of said county of Pulaski.

The declaration was filed on the 11th day of October, A. D., 1865, by leave of the court below, and on the 12th day of October the defendants below entered their appearance, and interposed the following plea:

" Come the said defendants by attorney, and defend the wrong and injury when etc., and say *actio non* because they say, that when said plaintiff offered to vote, as in said declaration supposed, they as such judges of said election, as in said declaration mentioned, demanded of him that he should, before depositing his vote, take an oath in accordance with the statute in that behalf, that he would support the constitution of the United States and of this state, and that he had not voluntarily borne arms against the United States, or this state, nor aided, directly or indirectly the so-called confederate authorities, since the 18th day of April A. D., 1864, which said oath, the said plaintiff then and there refused to take, wherefore said defendants, as such judges as aforesaid, did then and there refuse to receive said vote of the plaintiff, as they might and as it was their duty to do for the causes aforesaid."

To this plea the plaintiff below demurred and assigned for cause of demurrer, that the statute relied upon by the defendants below, in their plea, is in direct conflict with the constitution of the state of Arkansas, and is null and void and furnishes no legal excuse for refusing the vote of said plaintiff below at said election.

The demurrer, upon argument, was sustained by the court, and the plaintiffs in error electing to rest upon their plea, final judgment was rendered in favor of the defendant in error, by his consent, by the court, a jury having been waived, for one cent damages and cost of suit.

To reverse the judgment of the court below, the plaintiffs in

error have brought the cause before this court by writ of error, and assign for error, *first*, that the court erred in sustaining the demurrer to the defendant's plea, and *second*, a general assignment of error—thus presenting here for adjudication the constitutionality of the 6th section of the act of the legislature of the state of Arkansas, entitled " an act to provide for the manner of holding elections," approved May the 31st, A. D., 1864.

Before attempting to ascertain whether the 6th section of the act above referred to is in conflict with, and repugnant to the constitution of this state, we will attempt to define the limitations which that instrument imposes upon the powers of the legislative and other branches of the government of the state of Arkansas; how far and by what principles, legislative power is controlled under our form of government.

Legislation is the exercise of sovereign power, and under some forms of government, the power of the legislature is supreme, and uncontrolable, knows no limits, and is subject to no restrictions. The power and jurisdiction of parliament, says Sir Edward Coke, are so transcendant and absolute that they cannot be confined, either for causes or persons, within any bounds. In England, the powers of parliament are without limit, and are subject to no check; because, under that form of government, there is no written constitution or fundamental law, by which the validity of a statute can be tested; and all that can be said of it is, that it is an act of parliament and must be obeyed.

But such is not the case in America; for here, every state in the union has a written constitution, which defines to a certainty what the powers of each branch of the government are, and determines what rights the people have delegated to their representatives, and what they have retained or created for themselves by their organic law.

PATTERSON, J., in *Vanhone's Lessee vs. Dorance,* 2 *Dallas,* 308, in defining what a constitution is, says: " It is the form of government delineated by the mighty hand of the people, in which certain first principles of fundamental laws are established. The

constitution is certain and fixed; it contains the permanent will of the people, and is the supreme law of the land; it is paramount to the legislature, and can be revoked or altered only by the authority that made it. The life giving principle and the death dealing stroke must proceed from the same hand."

And, in defining what legislatures are, the same learned judge says: "They are creatures of the constitution; they owe their existence to the constitution: they derive their powers from the constitution. It is their commission, and therefore all their acts must be conformable to it, or else they will be void. The constitution is the work or will of the people themselves in their original, sovereign and unlimited capacity: law is the work or will of the legislature in their derivative or subordinate capacity. The one is the work of the creator, the other of the creature."

The constitution fixes limits to the exercise of legislative authority, and prescribes the orbit within which it must move. In short, the constitution is the sun around which all legislative, executive and judicial bodies must revolve; and that, whatever may be the case in other countries, yet in this there can be no doubt, that every act of the legislature repugnant to the constitution, is null and void.

The constitution of the state of Arkansas is then, the supreme law of the land, the commission or power of attorney which the people of a state have given to their representatives, defining and limiting the bounds within which they must act, and fixing the power which each department of the government may exercise; and is the supreme law of the land, and is fixed, permanent, uncontrolable and transcendant in its nature and operation, and cannot be revoked or altered except by the power that made it.

The constitution of this state is of binding force and obligation upon all departments of the government, and assigns the sphere within which each must act and establishes bounds beyond which neither can go. It is the work of the people, speaking in their original capacity, and establishes the permanent conditions of social alliance, and furnishes the test by which every act of the

legislative, as well as of the executive and judicial departments must be tried, and to which every act done by either must conform.

The constitution is the fortification within which the people have entrenched themselves for the preservation of their rights and privileges, and every act of the legislature, or other department of government, which infringes upon any right declared in the constitution, whether it be inherent in the people or created by that instrument, is absolutely void.

*Rector vs. State of Arkansas*, 6 *Ark. Rep.*, 187; *Eason vs. State of Arkansas*, 11 *Ark. Rep.*, 481; *Marbury vs. Madison*, 1 *Cranch*; *Kinnie's Law Comp.*, vol. 3, p. 314, and the numerous authorities there cited.

In the case of *Houston vs. More*, 5 *Wheaton*, the court said; " The law with us must conform in the first place to the constitution of the United States, and then to the subordinate constitution of this particular state, and if it infringes upon the provisions of either it is so far void."

By a course of judicial decisions reaching from the earliest history of American government to the present day, without a dissenting voice it has been adjudged that courts of justice have the right, and are in duty bound, to test every law by the constitution, as the fundamental and paramount law of the land, governing all derivative power and the exercise thereof. The judicial department with us is the proper power, under the constitution, to declare the constitutionality of a law, and every act of the legislature contrary to the true intent and meaning of the constitution, will be declared by the courts null and void, and of no effect whatever.

To contend that this is not so would be to assert, that the legislative branch of the government is supreme in its authority; that the creature is mightier than the creator; that the agent has greater power than his principal, who has commissioned him and sent him out to transact business under a written authority: that one co-ordinate and concurrent branch or department of the

government, subordinate to the constitution is absolute over the departments, and can control, according to its will and pleasure, all others. It would be to assign limits to legislative power by constitutional provisions, restraining the legislative body within certain bounds, and then to declare, that, although it had passed beyond the limits assigned to its power, and violated the authority designed to govern it, yet that its action is valid and of binding force and obligation upon the other departments of government, and has the effect to take away the very rights from the people, which they have secured to themselves by constitutional provisions. A doctrine too monstrous to be for a moment entertained, and in every way disconsonant to the fundamental principles and theories upon which our government is based, and one which in practice would soon sweep away every vestige of the rights of the people, and reduce them to subjection to absolute power, or what would be worse to a state of anarchy and confusion, where life, property and every right would be left to the mercy of the legislative power.

With these principles before us, we will proceed to determine whether the act of the legislature of the state of Arkansas, under which the plaintiffs in error justify their conduct in refusing to permit the plaintiff below to vote, is a constitutional law; for if so, it is valid and binding, and the plaintiff below had no right to vote, and was deprived of nothing which belonged to him: but upon the contrary, if the law relied upon by the defendants below is repugnant to the constitution of this state, then it is void, and can afford them no justification or excuse for what they did.

Section 2 of article 4 of the constitution of the state of Arkansas, provides that "every free white male citizen of the United States who shall have attained the age of twenty-one years, and who shall have been a citizen of the state six months next preceding the election, shall be deemed a qualified elector, and be entitled to vote in the county or district where he actually resides."

The plaintiff below, by his declaration avers that he was pos-

sessed of all the qualifications required by this section of the constitution, with the additional fact that he had taken and subscribed the oath prescribed by the proclamation of the president of the United States bearing date the 29th day of May last; and the defendants below do not traverse or in any manner put in issue the truth of these allegations, but confess the truth of them by way of confession and avoidance the 6th section of the act of the legislature of the state of Arkansas above referred to, and which is in words as follows:

"That each voter shall, before depositing his vote at any election in this state, take an oath that he will support the constitution of the United States and of this state, and that he has not voluntarily borne arms against the United States or this state, nor aided, directly or indirectly, the so-called confederate authorities since the 18th day of April, 1864; said oath to be administered by one of the election officers; and this act to take effect from and after its passage."

Section 2 of article 4 of the constitution, fixes the qualifications, and determines who shall be deemed qualified voters in this state in direct, positive, and affirmative terms, and these qualifications cannot be added to by legislative enactment

The convention, when it formed the constitution, after having enunciated the time honored principles, found, we believe, in all American constitutions: "That all power is inherent in the people, and all free governments instituted for their peace and happiness," declare by the section of the constitution above quoted, who shall be deemed qualified electors in this state, and have fixed all the pre-requisites necessary to qualify a citizen to exercise the elective franchise.

The framers of the present constitution of this state had in view, and represented all the people thereof, men, women and children, white, colored and Indians, and recognizing, as they declare in the preamble of the constitution, the "legitimate consequences of the existing rebellion," saw fit to provide that every white male citizen of the United States, over the age of twenty-

one years, and who shall have been a citizen of this state six months next preceding the election, shall be deemed a qualified voter in the county or district in which he actually resides, and no person having these qualifications can be deprived of the exercise of the elective franchise by mere legislative enactment, while the constitution remains unaltered. Indeed the right of those having the constitutional qualifications to vote, is founded in the fundamental law of the land, and cannot be legislated away. The right of suffrage in this state, if not an inherent, is at least a constitutional right, and whoever possesses the required qualification, cannot be restrained from the exercise of that right except by the alteration of the constitution, and any law infringing upon that right as vested by the constitution is null and void.

Then the inquiry is, has the 6th section of the act above copied the effect to abridge the right of suffrage conferred by the constitution—does that law require other and different qualifications than those required by the constitution—in short, is the law repugnant to the constitution? The answer to these inquiries will be arrived at by an examination of the law in question.

The sixth section of the act under consideration has a two-fold operation: one prospective; and the other retrospective.

That part of the law which requires the voter, before depositing his vote, to swear that he will support the constitution of the United States, and of this state, is prospective in its operation, and looks to the future conduct of the voter, and requires nothing more of him than by law he is bound to do. This part of the law does not look into his past history, or scrutinize his antecedents. It does not demand that he shall purge himself of treason against the United States or this state. It does not have the effect to restrict the right to vote as conferred by the constitution, nor does it add to the qualifications required by the constitution; and is therefore free from the objection of unconstitutionality, and is as we conceive, thus far a valid law. *Bank of Hamilton vs. Dudley,* 2 *Pet.,* 526; 2 *Blackf.,* 8.

But, how is it with the residue of the oath required? That

part of the law which requires the voter, before depositing his vote, to swear that he has not voluntarily borne arms against the United States or this state, nor aided the so-called confederate authorities since the 18th day of April, A. D., 1864, is retrospective and calls upon the voter to purge himself of treason against both the United States and this state, before he is allowed to vote : and although this part of the law is professedly enacted, " To PROVIDE THE MANNER OF HOLDING ELECTIONS," it is, in effect, nothing but a prohibition upon the right to vote as secured by the constitution ; and is of the same import as an affirmative provision that no person who has voluntarily borne arms against the United States, or this state, or aided the so-called confederate authorities, since the 18th day of April, 1864, shall be allowed to vote at any election in the state of Arkansas.    And to admit that the legislature may do this, would be to declare that part of the constitution which defines the qualifications of a voter, absolutely nugatory, and would turn section 2 of article IV, of our constitution into the merest nonsense.    And clearly, if the legislature cannot, by direct legislation, prohibit those who possess the constitutional qualification to vote, from exercising the elective franchise, that end cannot be accomplished by indirect legislation. The legislature cannot, under color of regulating the manner of holding elections, which to some extent that body has a right to do, impose such restrictions as will have the effect to take away the right to vote as secured by the constitution.

The legislature may compel a voter to take an oath to the effect that he possesses the qualifications prescribed by the constitution; and may fix the time of holding elections, and the manner of making returns, etc.; for those things are within the constitutional powers of the legislature.

And again, it is to be observed that that part of the law which requires the voter to swear that he has borne arms against the United States, or this state, or aided the so-called confederate authorities, is punitive in its operation.    It is attempted by this provision to ascertain whether the voter has offended within the

meaning of the act; and if by the searching operation of the oath prescribed he is found guilty, the penalty annexed is the loss of the right to vote, and that too by a process entirely unknown to our constitution and laws. So much of the oath as relates to bearing arms against the United States and aiding the so-called confederate authorities, refers directly to offences against the government of the United States, and as such are not within the powers and jurisdiction of this state to punish even by due process of law; and much less can the legislature, by mere legislation, punish such offences, and as a penalty take away the right of suffrage from a qualified voter of this state. These are crimes against the United States, and can only be punished or forgiven by that government; and are not cognizable before any authority or tribunal of a state. And the chief magistrate of the United States, acting upon this principle, by his proclamation of the 29th of May last, in conformity with the authority conferred upon him by the constitution of the United States, and the act of congress made in pursuance thereof, has most graciously extended pardon and amnesty to a large majority of the citizens of this state, who had engaged in the late rebellion, declaring that all persons not excepted by said proclamation from the benefits thereof, who would take and subscribe a certain oath thereby prescribed, should receive full amnesty and pardon.

Within the provisions of which proclamation the plaintiff below has brought himself by the averments contained in his declaration. Hence, whatever might otherwise have been the effect of his having borne arms against the United States, or of his having aided the so-called confederate authorities, he has now been fully pardoned and forgiven, and is no longer amenable to any authority for his acts in that behalf; and to deprive him of his right to vote on account of his participancy in the war against the United States, would be to punish him for a crime of which he has been pardoned; or, in other language, to inflict a penalty where there is no legal guilt.

But if he had not taken the amnesty oath, still his having

borne arms against the United States would not, as we will here-after show, have worked a forfeiture of his right to vote until he had been convicted thereof by due process of law.

Then as to that part of the law that requires the voter to take an oath that he has not borne arms against this state since the 18th day of April, A. D. 1864.

To bear arms against the state of Arkansas, in the sense of the law under consideration, is to levy war against the state, and is treason, and as such is indictable, and upon due conviction there-of, the offender, by the law of this state, is punishable with death, and in that case there would be an end of his voting. But the offender cannot be convicted by an act of the legislature. That body, by the mere exercise of legislative authority, cannot de-clare a forfeiture. The legislature cannot enact, apply and execute a law. The same department under our form of govern-ment, cannot act as legislator, judge and executioner. Such a course would be in open and palpable violation of section 2, article III, of the constitution of the state of Arkansas, which ordains that, no person or collection of persons being of the one department of the government shall exercise any power belong-ing to either of the other departments, except in the instances hereinafter expressly directed or permitted: and the exception herein contained refers to trials by impeachment.

How, then, can a right or privilege be forfeited under our form of government ?

The constitution of the state of Arkansas answers this interro-gatory. Sections 10, and 14, of the bill of rights put the ques-tion forever at rest. The 10th section of the bill of rights de-clares that " no man shall be taken or imprisoned, or disseized of his freehold liabilities or privileges, or outlawed or exiled, or in any manner destroyed, or deprived of his life, liberty, or proper-ty, but by the judgment of his peers or the law of the land." And the 14th section of the bill of rights provides that " no man shall be put to answer any criminal charge, but by presentment, indictment or impeachment, except as hereinafter provided,"

which exception refers to petty offences made cognizable before justices of the peace.

The 10th section of our bill of rights is taken, with slight variation, from *magna charta*, and is found, in substance, in all American constitutions, and its meaning is well settled, both in this country and in England, by numerous adjudications. CHANCELLOR KENT says: " It may be received as a proposition, universally understood and acknowledged throughout 'this country, that no person can be taken or imprisoned, or disseized of his freehold or estate ; or exiled or condemned, or deprived of his life, liberty or property, unless by the law of the land, or the judgment of his peers. The words, *by the law of the land*, as used originally in *magna charta*, in reference to this subject, are understood to mean due process of law, that is, by indictment or presentment of good and lawful men: and this, says Lord Coke, is the true sense and exposition of those words. ' The better and larger definition of *due process of law* is, that it means law in its regular course of administration through courts of justice." 1 *Kent's Com.*, 612 ; 2 *ib.*, 13 ; *Story on the Cons.*, vol. 3, *p.* 264, *and* 661 ; *Coke's Inst.*, 45-50.

And Mr. Justice BRONSON, commenting upon the provision in the constitution of the state of New York, which provides that " No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers," says : "The words, by the law of the land, as here used, do not mean a statute passed for the purpose of working the wrong. That construction would render the restriction in the constitution, absolutely nugatory, and turn this part of the constitution into merest nonsense. The people would be made to say to the two houses, you shall be vested with the legislative power of the state, but no one shall be disfranchised, or deprived of any of the rights or privileges of a citizen, unless you form a statute for that purpose, or in other words, you shall not do wrong unless you choose to do it." *Taylor vs. Porter*, 4 *Hill*, 145.

From these and many other authorities that might be cited, it is plain that no one can be deprived of his rights or privileges, unless the matter be adjudged against him by due course of common law.

Then it is clear that although treason is the highest crime known to the laws of this state, the mere commission of that offence will not in itself work a forfeiture of the rights or privileges of the offender, but before he can be deprived of all or either of them, he must be convicted by due process of law. From this view of the case it is evident that, that part of the 6th section of the act of the legislature of the state of Arkansas, entitled " an act to provide for the manner of holding elections," approved May 31st, 1864, which requires the voter before depositing his vote to swear that he has not voluntarily borne arms against the United States or this state, nor aided the so-called confederate authorities since the 18th day of April, 1864, is repugnant to, and in open conflict with the constitution, and in every point of view is an entrenchment upon the rights secured by the fundamental law of this state, and is therefore absolutely null and void. The constitution having fixed the qualification of an elector in this state, those possessing the qualifications required, can no more be deprived of the right to vote by legislative enactment, than they can be deprived of the right to trial by jury, or the right to worship God according to the dictates of their own consciences.

Part of the law under which the plaintiffs in error justify, being void for unconstitutionality, and their plea being entire, and bad for part is bad for the whole, (*Chit. Plead. vol.* 1, *p.* 146,) and can afford them no justification or excuse for refusing to accept the vote of the defendant in error, at said election.

Finding no error in the proceedings or judgment of the court below, the judgment of that court must be and is hereby affirmed.