HUTTON, COLLECTOR, v. KING.

HUTTON, COLLECTOR, v. JONES.

Opinion delivered June 10, 1918.

1. CONSTITUTIONAL LAW—CREATION OF OFFICE—DUTIES MAY BE FIXED OR CHANGED BY LEGISLATURE.—A constitutional provision merely

creating an office does not amount to a prohibition against legislative action varying the duties of that office.

2. COUNTY TAX ASSESSOR—DUTIES OF—CONTROL BY LEGISLATURE.—While the office of county tax assessor is provided for by the Constitution, the act of the Legislature (Act of 1917, page 1237) restricting his duties is not in violation of the Constitution. The Legislature may select other valuers of taxable property to act with the assessor, for that does not exclude the assessor from the discharge of the duties of his office.

3. TAXATION—COUNTY TAX ASSESSMENT—TOWNSHIP ASSESSMENT PLAN.—Act of 1917, page 1237, entitled "An act to abolish the county boards of equalization, to provide for the assessment and valuation of the taxable property in the State of Arkansas, and for other purposes," and which act provides that the county court appoint two taxpayers in each township of the county who, together with the tax assessor, shall be known as the Township Board of Assessment and Valuation for said township, is not unconstitutional as being in conflict with that clause of the Constitution which provides for the election of a tax assessor in each county, and said act is a valid exercise of legislative power.

4. TAXATION—PENALTY FOR FAILURE TO ASSESS — NON-RESIDENT OWNER.—Where a non-resident owner of real property failed to assess the same for taxation, under the act of 1917, page 1237, *held* the minimum penalty of one dollar on each lot owned by the non-resident owner may be exacted, even though the aggregate penalty on all his lots exceeds 25 per cent. of the taxes assessed thereon.

5. TAXATION—FAILURE TO ASSESS—RESIDENT OWNER.—Under the Act of 1917, page 1237 (§ 5), no penalty can be assessed against a resident owner of property, who appears before the board, as required by the statute, and assesses some of his real property but fails to assess all of it.

Appeal from Pulaski Chancery Court; *Jno. E. Martineau,* Chancellor; reversed as to King; affirmed as to Jones.

*Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellant.

1.　It is clear that the Legislature intended to impose a penalty, in proportion to the tax, but with a minimum of $1 on each tract of land not included in a return for which the act calls. Each separate tract or lot is subject to penalty irrespective of other tracts of the same owner. Taxes are charges upon the lands and not debts against

the owner and the penalties follow the taxes themselves against the lands. Kirby's Digest, § § 6976, 7010; Cooley on Taxation, (3 ed.) 17.

2. The act is not unconstitutional as being in conflict with the clause of our Constitution providing for the election of an assessor, etc., and providing his duties. Const., art. 7, § 46; art. 16, § 5; 52 Ark. 529, 536; 49 *Id.* 518, 522; 47 *Id.* 523; 27 *Id.* 176, 182; 89 *Id.* 456-9; 11 So. 789; 25 S. E. 998; 110 Pac. 177.

*Walter J. Terry,* for appellees.

1. The court properly construed and interpreted the act. Where the delinquent within the time tenders the tax on a given list, it is the duty of the collector, first, where such delinquent has wholly failed to file his list as provided, to accept the taxes plus the 25 per cent. penalty if their aggregate equals or exceeds a dollar; and second, where such delinquent has honestly endeavored to comply with the law, but has inadvertently omitted some of his property, and where the township assessors have not visited him and there assessed and penalized his property, it is then the duty of the collector to accept the tax tendered without any penalty whatever. 166 N. W. 936; Kirby's Digest, § § 6965, 7015, 7010, 6980-2, 6971-6, 6980-1, 6966, 6963, 6914, 6975, etc.

The penalty attaches to the whole list rather than to each tract or lot. § 5 Acts 1917, p. 1237, *Ib.* § 2.

2. The act is unconstitutional. Const. art. 7, § 46; 46 Cal. 415. It is the duty of the assessor to make the primary valuations of all property. See also, 49 Ark. 518; 99 Tenn. 667; 42 S. W. 880; 35 Oh. St. 421; 29 Hun, 175; 50 Atl. 360; 26 Wis. 412; 65 N. C. 603; 32 N. Y. 428; 71 N. Y. Supp. 814; *Ib.* 44; 43 Am. Dec. 740; 55 N. Y. 55. The act detracts from and impinges upon the powers and duties of the assessor.

McCULLOCH, C. J. Appellant, as sheriff and ex-officio tax collector in and for Pulaski County, was the defendant in two separate actions instituted by owners of real estate to compel him to accept payment of taxes

without exacting the statutory penalty extended on the tax books by the clerk against the several tracts or lots of real estate owned by those parties. The sheriff refused to accept the amount and execute a receipt, without payment of the penalty, and the actions were instituted to compel him to do so on the ground that the exaction of the penalties were illegal. The penalties were imposed against the property on account of the failure of the owners to furnish assessment lists in accordance with the requirements of the statute enacted by the General Assembly of 1917, entitled ''An act to abolish the county boards of equalization; to provide for the assessment and valuation of the taxable property in the State of Arkansas and for other purposes.'' Acts of 1917, p. 1237.

This is the statute popularly known as the Township Assessment Plan. The statute provides, in substance, that the county court of each county shall appoint ''two reputable and intelligent citizens and tax payers in each township of the county,  *   *   *  who, together with the county tax assessor, shall be known as the Township Board of Assessment and Valuation for said township.'' Other provisions of the statute with regard to the imposition of penalties for failure of property owners to assess will be referred to later in this opinion.

Other sections of the statute prescribe penalties of twenty-five per centum on all taxes due, with a minimum of one dollar, to be collected with other taxes, and the controversy in this case concerning the interpretation of the statute is whether the specified minimum penalty should be imposed on each one of numerous lots owned by the same person, or whether the percentage penalty, if it exceeds the minimum on all of the property of the same delinquent owner, shall be apportioned among the different tracts or lots of that owner. The chancery court decided in accordance with the latter view and reduced the penalties extended on the tax books to the gross maximum of the percentage on all the property not assessed by the owner, and the collector has appealed to this court.

Counsel for appellees, in presenting the cause here, has made an assault on the statute as being in conflict with that clause of the Constitution which provides for the election of a tax assessor in each county. The contention is that the provision in the Constitution for the election of an assessor constitutes in itself a scheme for the assessment of taxes by the county assessor as the primary valuing officer, and that that scheme can not be altered by the General Assembly.

We deem it proper to give consideration to this attack upon the statute for the reason that if the statute is void in its entirety there is no authority for imposing a penalty except under an entirely different pre-existing statute. The section of the Constitution against which it is argued that the statute offends reads as follows:

"The qualified electors of each county shall elect one sheriff, who shall be ex-officio collector of taxes, unless otherwise provided by law; one assessor, one coroner, one treasurer, who shall be ex-officio treasurer of the common school fund of the county, and one county surveyor, for the term of two years, with such duties as are now or may be prescribed by law. Provided, that no per centum shall ever be paid to assessors upon the valuation or assessment of property by them." Sec. 46, art. VII, Constitution of 1874.

Another section which must be considered in connection with the one just quoted reads in part as follows:

"All property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property from which a tax may be collected shall be taxed higher than another." Sec. 5, art. XVI.

It will be observed that the very section of the Constitution which is relied on by learned counsel for appellees as sustaining the contention that the framers of the Constitution meant by the provision for the election of a county assessor to erect a scheme for assessment of taxes with the tax assessor as the sole primary valuer, con-

tains a further provision that the officers named in the section shall have "such duties as are now or may be prescribed by law." In the other section quoted there is an express provision that the value of property is to be ascertained in such manner as the General Assembly shall direct. Those two provisions must, of course, be read in harmony so as to give effect to each, and when so read they mean that there shall be a tax assessor elected with duties which the name of his office implies, but that the Legislature may prescribe those duties and direct the manner in which value of taxable property shall be ascertained. They mean, in other words, that the office of tax assessor must form a fixed part of any valuation scheme erected by the Legislature, and that the office can not be abolished nor made a sinecure and an entirely different scheme adopted, but that the law-makers may, from time to time, prescribe the duties of the office and adopt such other methods as may be deemed expedient to ascertain the values of taxable property. *Pulaski County Board of Equalization Cases,* 49 Ark. 518.

(1)  It is a well established principle that a constitutional provision merely creating an office does not amount to a prohibition against legislative action varying the duties of that office. The rule is stated by Mr. Throop to be that: "Unless the Constitution otherwise expressly provides, the Legislature has power to increase or vary the duties, or diminish the salary or other compensation appurtenant to the office." Throop on Public Officers, sec. 19. That rule has been adopted and subsequently followed by this court. *State* v. *McDiarmid,* 27 Ark. 176; *Board of Equalization Cases, supra; Cain* v. *Woodruff County,* 89 Ark. 456.

However, the rule finds recognition in the express language of our Constitution which declares the power of the Legislature to prescribe the duties of each office—a power which would have existed anyway in the absence of constitutional restriction. *Board of Equalization Cases, supra.* The last case just cited involved the question of constitutionality of a statute providing for county boards

of equalization, and the present statute abolishes those boards and substitutes township boards composed of the tax assessor and two citizens of each township. This court sustained the constitutionality of the act providing for county boards of equalization. In the opinion it was said: ''The framers of the Constitution of 1874 were therefore familiar with the practice of correcting and revising the assessment of county assessors, whether the office was created by the Legislature or the Constitution; but they have nowhere made their returns conclusive or prohibited the creation of boards to revise and equalize them.'' Further along in the opinion this statement is found: ''As one of the necessary steps toward ascertaining values for taxation, local assessors elected for the purpose must make, or be afforded the opportunity to make, the primary assessment. But this valuation need not be final. On the contrary, it becomes the duty of the Legislature to afford the means of making this approximate estimate of values conform as nearly as practicable to the constitutional design of equality and uniformity.'

(2) No distinction is perceivable, so far as the constitutionality of the two statutes is concerned, one providing for supervision and change in the assessment made primarily by the assessing officer, and the other creating township boards to sit with the officer, even though these boards have the power to overrule the judgment of the assessor. Under the present statute the assessor is the central figure of the township scheme, and he is an active participant in the valuation made by the board, notwithstanding the fact that the judgment of the majority of a board will prevail over his when he disagrees. We do not understand that the learned justice who wrote the opinion in the *Board of Equalization Cases, supra,* meant to commit us to the rule that under the Constitution the assessor must be the sole primary valuer, or that a property owner is entitled to have a primary assessment made by the county tax assessor to the exclusion of any other agency. It was not necessary to so

decide in that case, and the majority of us are of the opinion that such was not the intention in that case, and that the necessary effect of that decision was to hold that the constitutional provision with regard to creating the office of assessor did not restrict the power of the Legislature to regulate and restrict the duties of that officer or to superadd other agencies to participate in the valuation of property. We think, in other words, that as long as the office itself is not abolished and the tax assessor participates in the scheme adopted by the Legislature, the statutory change and restriction of the duties of the assessor does not offend against the Constitution. The Legislature may select other valuers of taxable property to act with the assessor, for that does not exclude the assessor from the discharge of the duties of his office. In such a scheme the assessor is afforded the opportunity to make and does make the primary assessment, even though his valuation is set aside by others clothed with authority to do so by the Legislature.

(3) Much stress is laid by counsel on the provision of one of the sections of the present statute authorizing the members of the board to assess delinquents and impose penalties. It is urged that this excludes participation on the part of the assessor altogether. We do not wish to be understood as holding that the Legislature is powerless to provide a different scheme altogether for assessing property of delinquents, but we content ourselves by saying, in this connection, that the return of the other members of the board on the property of delinquents is made to the assessor and he certifies the same, thus affording him participation even in the assessment of delinquents. Upon the whole we are convinced that the statute is not unconstitutional, and that the attack upon it in that respect is unfounded.

Having reached the conclusion that the statute is a valid exercise of legislative power, we proceed to an interpretation of the same for the purpose of determining under what circumstances the penalty attaches for

non-assessing and the manner in which the penalty is imposed and distributed.

The statute provides, as before stated, a plan of assessing property by township boards and the owners of property are divided into two classes, residents and non-residents, meaning, of course, residents and non-residents of the township in which the assessment is made. Section 6 of the statute provides the manner in which real estate in different townships owned by the same owner may be assessed. Owners of real property are required, under the statute, to list the same, and this constitutes a change in the assessment plan from the former statute under which the property owners were only required to list personal property. This statute does not provide a complete scheme for the assessment of property, but it is enacted in connection with existing statutes, and does not repeal the same except in certain particulars, the two changes already mentioned being the principal ones. Section 2 of the new statute deals with penalties imposed on non-resident property owners who fail to assess, and, after providing for the assessor's tour of the county to make the assessments, and the filling of vacancies in township boards by appointment made by the assessor, this section reads as follows:

"That said board shall at once proceed to place a fair market value on all real and personal property in their township and extend said values in the proper blanks on the lists of assessment, which blanks shall be provided on said lists to contain the values of property as determined by said board in addition to similar blanks used by property owners for noting the value of their property. That it shall be the duty of non-residents, or their agents, to furnish the assessor with a list of their property in each township, specifying the school district wherein it is located, on or before the first day of the time advertised for assessing taxes in such township, in which such non-resident shall own property, which first the assessor shall submit to the board of assessment and valuation for the township in which such property is situ-

ated, and if no one shall assess its value as a majority of the board shall think right and just, and if any non-resident or his agent shall neglect or refuse to furnish such list to the assessor in the time provided for herein, and no one shall assess such property for said non-resident, it shall be the duty of the board of assessment and valuation to make such list and assess such property and they shall affix a penalty of 20 per centum on all taxes due with the minimum penalty of $1 to be collected as other taxes and penalties are now collected and expended as herein provided. That each member of said board, together with the assessor, shall, after they have finished said work as provided herein, sign each list of assessment, which signatures shall be proof of the validity of said lists and the values of the property thereon listed.''

Section 5 deals with the valuation of property of residents of the township in which the assessment is made, and it reads as follows:

''Should any person fail to meet the board of assessment and valuation at the time and place as advertised in the township in which such person resided, it shall be the duty of the members of the said board who assisted the assessor in making the assessment in said township beginning ten days after the assessor shall have finished his canvass of the county as advertised by notice provided for in section 6964 of Kirby's Digest of the Statutes of Arkansas, to visit the places of residence or business of such delinquent and there list and value his or her property and either of the members of said board shall be empowered to swear said delinquent to his list, as provided herein with the same effect as though the oath had been administered by the assessor himself and shall affix to said list a penalty of 25 per centum of all taxes due to be noted on said list and on the tax books and extended by the county clerk to be known by the collector of the taxes as now provided by law; provided, that the minimum penalty so fixed shall be $1. That fifty cents of said penalty shall go to the officer making such delinquent assessment and the remainder of all penalties shall go

to the unapportioned school funds of the county as now provided for such penalties, and such delinquent list of assessment shall be transmitted to the assessor within (15) fifteen days after the date for beginning the taking of such delinquent assessments; and, provided further, that the failure or refusal of any person to take the oath of assessment provided herein or to list his property, shall empower said board or members thereof to assess and value said delinquent property and fix the value thereof.''

The plaintiffs in the cases now before us belong, respectively, to the two classes of property owners mentioned in the sections above quoted, that is to say one of them (King) is a non-resident, and the other (Jones) is a resident. The non-resident plaintiff failed to file with the assessor a list of property which included 130 lots in a certain addition to the city of Little Rock. The resident plaintiff appeared before the board for the purpose of listing and valuing his property, but omitted from his list certain city lots, sixty in number. Counsel agree that there is propounded in the record the following two questions in the interpretation of the statute:

''1. What penalty should be assessed against a non-resident of the State owning no personal property in the State, who fails to make any return to the tax assessor, as required by law?

''2. What penalty should be assessed against a resident of the State who owns personalty and real estate within the same township, and who assesses his personalty and part of his realty and omits from his assessment part of his realty, aggregating sixty (60) town lots in number?''

Those questions will be dealt with in the order in which they are propounded, which brings up first for consideration the interpretation of the statute with respect to the imposition of penalties against non-residents.

(4) The chancery court accepted the view of the non-resident plaintiff as a proper interpretation of the statute and decided that, in distributing the penalties

against numerous lots or tracts of land owned by the same owner, the aggregate of the 25 per centum of the taxes on all the property should be exacted, even though it amounted to less than one dollar on each lot. The contention of the defendant is that under the statute the minimum penalty of one dollar on each lot can be exacted, even though the aggregate on all the lots exceeds 25 per centum of the taxes assessed thereon. This contention is based on the idea that each separate tract or lot of real estate is listed and assessed separately, irrespective of ownership and that the penalty for failing to list the same should be imposed independently of other property of the owner.

We are of the opinion that the defendant's interpretation of the statute is correct and that under this plan of assessment each separate tract or lot of real estate is subject to penalty irrespective of other tracts of the same owner. Under our system of taxation the charge is made against the land and not the owner, and there is no provision for the ascertainment of ownership except the requirement in the statute now under consideration that each owner shall list and value his real estate, but this latter provision does not alter the rule, which forms an essential part of the taxation scheme, that it is the land itself which is to be charged and not the owner. The existing revenue laws, which in this particular were not changed, require the county clerk to furnish to the assessor a book for real estate assessments which shall contain descriptions of each tract or lot and name of the owner in appropriate columns, specifying in each separate description ''each tract by section, or the largest subdivision of which the same is capable'' where it is property outside of incorporated cities and towns, and specifying separately each lot in a city or town. The statute provides that if the name of the owner of any tract or lot is not known it shall be listed as ''unknown.'' Kirby's Digest, § 6976.

Another unrepealed section of the revenue law expressly provides that the fact that a tract or lot of real

estate was listed on the tax books in any other name than that of the rightful owner shall not invalidate the assessment or sale.   Kirby's Digest, § 7113.

Considering all of these provisions together, as we should do in interpreting the will of the law makers, it is clear, we think, that it was intended to provide a separate assessment of each lot and a separate penalty chargeable thereon in case of omission from the list furnished by a non-resident owner.   The utmost confusion would arise under any other view, because the assessing officers themselves are not provided with accurate means of determining the ownership and the distribution of the gross amount of 25 per centum on all of the real estate of a given owner could not be made in the absence of accurate knowledge of ownership.   Under any other view there would be presented the further difficulty of distributing penalties against undivided interests of tenants in common, whereas there is no provision at all in our statutes for the assessment of undivided interests.   The lots and tracts are assessed as a whole and not according to the several interests of the different owners.

We are of the opinion, therefore, that the assessor correctly imposed the minimum penalty of one dollar on each lot owned by the delinquent non-resident owner, and that the chancery court erred in reducing the amount to the aggregate of the 25 per centum of the taxes assessed against all of the real estate of that particular owner.

(5)   Turning then to the other case involving the penalty against the property of the resident owner, we find an altogether different provision for the imposition of such penalties.   Under section 2 of the statute, non-resident owners are required to furnish to the assessor lists of all property, real and personal, or to appear in person or by agent and make assessment.   The penalty is imposed in case of failure to furnish a list "if no one shall assess such property for said non-residents."   On the other hand, section 5, dealing with the imposition of penalties against residents only provides for penalties where owners "fail to meet the board of assessment and

valuation at the time and place advertised in the township in which such person resided." This section was intended to require a face-to-face meeting of the property owner with the township board. The property owner is also required to list all of his property and to value the same and to make oath to the valuation. But the penalty is imposed only in case of failure of the owner "to meet the board." Where this requirement is complied with the statute does not impose a penalty for omission of property from the assessment list. In other words, the statute does not penalize on account of partial omission of property by an owner who appears before the board for the purpose of assessing his property. We have nothing to do with the policy of this statute and the distinction which is made in the imposition of penalties, but it is beyond our power to read into the statute a penalty which is not expressed therein in clear terms or by necessary implication. Where the statute, according to the plain meaning of the language used, only imposes a penalty against a resident owner for failing to appear before the assessing board for the purpose of assessing his property we can not construe it to impose a penalty for partial omission of property from the assessment list of the owner who actually appears before the board and presents a list of his property.

We are of the opinion, therefore, that the property of Jones, the resident plaintiff, was not subject to penalty, but he has not appealed from the decree imposing a penalty of 25 per centum of the taxes assessed against his property, and the decree in that case is affirmed.

The decree in the King case is reversed and the cause is remanded with directions to dismiss the complaint for want of equity.

HART, J., (dissenting). In the case of *Rison* v. *Farr*, 24 Ark. 161, the court said: "The Constitution is the fortification within which the people have entrenched themselves for the preservation of their rights and privileges, and every act of the Legislature, or other department of the government, which infringes upon any

right declared in the Constitution, whether it be inherent in the people or created by that instrument, is absolutely void."

Therefore, having reached the conclusion that the Legislature has invaded and disregarded the constitutional scheme for assessing taxes and has substituted another not provided for by the Constitution, it becomes my duty to give my reasons for such belief.

The proper determination of the constitutionality of the statute involves the construction of article 7, section 46, and article 16, section 5, of our Constitution. Section 46 of article 7 reads as follows:

"Section 46. The qualified electors of each county shall elect one sheriff, who shall be *ex-officio* collector of taxes, unless otherwise provided by law; one assessor, one coroner, one treasurer, who shall be *ex-officio* treasurer of the common school fund of the county, and one county surveyor, for the term of two years, with such duties as are now or may be prescribed by law. Provided, that no per centum shall ever be paid to assessors upon the valuation or assessment of property by them."

Section 5 of article 16 is as follows:

"All property subject to taxation shall be taxed according to its value; that value to be ascertained in such manner as the General Assembly shall direct, making the same uniform throughout the State. No one species of property from which a tax may be collected, shall be taxed higher than another species of property of equal value."

In construing these two sections in the *Pulaski County Board of Equalization Cases,* 49 Ark. 518, the court said that the duties performed by the county assessor were well understood and performed in this State long before the office found recognition in the present Constitution and that the framers of the Constitution of 1874 were familiar with the practice of correcting and revising the assessments of county assessors whether the office was created by the Legislature or the Constitution. It was therefore held that under these sections of the Constitution the valuation placed upon property by the asses-

sor was not final and that a board of equalization could be created for the purpose of revising his assessments. In that case the court said that the question of whether boards of equalization could be authorized to make original assessments under any circumstances was not presented by the record. But as a part of the reasoning of the court, in deciding that the Legislature had the authority to create a board of equalization to act in a revising capacity, the court said:

"As one of the necessary steps toward ascertaining values for taxation, local assessors elected for the purpose must make, or be afforded the opportunity to make, the primary assessment. But this valuation need not be final. On the contrary, it becomes the duty of the Legislature to afford the means of making this approximate estimate of values conform as nearly as practicable to the constitutional design of equality and uniformity. *Savings & Loan Society* v. *Austin,* 46 Cal. 473; *People* v. *Saloman,* 46 Ill. 337."

In *Savings & Loan Society* v. *Austin, supra,* the Supreme Court of California was construing a provision of its Constitution very similar to the sections of our own above quoted. It reads as follows:

"Section 13. Taxation shall be equal and uniform throughout the State. All property in this State shall be taxed in proportion to its value, to be ascertained as directed by law; but assessors and collectors of town, county and State taxes shall be elected by the qualified electors of the district, county or town in which the property taxed for State, county or town purposes is situated."

Article 11, section 13 of the Constitution of the State of California of 1849 and amended in 1862.

In that case the court upheld the validity of a State Board of Equalization and said: "The dominant idea of the Constitution on the subject of taxation is, first, that it "shall be equal and uniform throughout the State," and second, that "all property in the State shall be taxed in proportion to its value, to be ascertained as

directed by law;'' and, as a part of the system for producing equality and uniformity, it provides that ''assessors and collectors of town, county and State taxes shall be elected by the qualified electors of the district, county or town in which property taxed for State, county or town purposes is situated.''

Continuing the discussion on the next page, the court said: ''As one of the necessary steps towards ascertaining its value, local assessors must be elected, who shall make the primary valuation. But there is nothing in the instrument to indicate that this valuation was intended to be final. On the contrary, it is expressly provided that the valuation is to be ascertained ''as directed by law''— which is an explicit recognition of the power of the Legislature to provide appropriate methods for ascertaining the value, subject only to the limitation that the primary valuation shall be made by local assessors to be elected by the people of the district. It may be further observed that, when the Constitution was adopted, the term ''assessor'' was not understood as defining an officer whose valuations were to be necessarily final. On the contrary, from the earliest period in our American jurisprudence, assessors had been employed in almost every State for the purpose of making the primary valuation of property for taxation, and in none of them, so far as we are advised, was this valuation final, but was subject to correction and alteration by some supervisory board or officer. In employing the term ''assessor'' the framers of the Constitution must be understood to have used it in this its popular sense. We are, therefore, of opinion that it is competent for the Legislature to provide appropriate methods for equalizing assessments in the several counties.''

A careful reading of the *Board of Equalization Cases* in 49 Ark. 518, shows that the court had much the same idea as the California Supreme Court. While the question of whether the board of equalization could be created to make original assessments was not presented in either case, yet the language used in both decisions constitutes a part of the reasoning of the court in holding that the

valuation made by the assessor is not final but that the valuation made by him could be changed, altered or modified by a board of equalization created for that purpose. That, the office of assessor being a constitutional office it, can not be abolished by the Legislature by direct enactment, nor could the office be entirely abolished by transferring the duties of that office to some other person or board. is established by the principles of law laid down in the following cases: *People* v. *Raymond,* 37 N. Y. 428; *Massenburg* v. *Commissioners,* 96 Ga. 614, and *State* v. *Douglass,* 33 Nev. 82.

In the last mentioned case it is said that it is well settled by the courts that the Legislature, in the absence of special authorization in the Constitution, is without power to abolish a constitutional office, or to change, alter or modify its constitutional powers and functions. Many authorities are cited in support of the rule. It is said in the majority opinion that this rule is not transcended because the statute allows the assessor to participate in making primary assessments. This is not sufficient. It was intended by the framers of the Constitution that the primary or original assessment of all ordinary property or property lying wholly within the limits of the county should be assessed by the county assessor.

Neither can it be said that the statute merely creates a board of equalization to revise or modify the primary assessment made by the assessor. Its language excludes that idea, and in my opinion no refinement of argument can change the meaning of the plain import of the words used by the Legislature. The act is entitled, "An Act to Abolish the County Boards of Equalization; to Provide for the Assessment and Valuation of the Taxable Property in the State of Arkansas and for other purposes." Acts of 1917, page 1237.

Section 1 provides that the county court may appoint assistant assessors in each township, who, together with the county tax assessor, shall be known as the Township Board of Assessment and Valuation for said Township; "that the members of said board shall take and subscribe

to the same oath as subscribed to by the tax assessor.'' Section 2, after stating that the assessor shall administer the oaths of the assistants, provides, ''That said board shall at once proceed to place a fair market value on all real and personal property in their township and extend said values in the proper blanks on the lists of assessment, which blanks shall be provided on said lists to contain the values of property as determined by said board in addition to similar blanks used by property owners for noting the value of their property.''

Thus it appears that the same oath is to be taken by the members of the board as is taken by the assessor under the Constitution and that precisely the same essential functions are to be performed by the board in assessing property as were formerly performed by the assessor at the time of the adoption of the present Constitution. The acts done by the board and the result to be accomplished by it are identical with the duties to be performed by the county assessor before the board was created. The plain intention of the Legislature was to take away from the county assessor control over the original assessment of property and by conferring powers upon a board created by it to substitute such board in place of the assessor in making the original or primary assessment of property. It thus deprives the people of the right to have the primary assessment of their property made by the county assessor, a right secured to them by the Constitution, and the act is, therefore void.

Mr. Justice WOOD concurs in this dissent.