PAUL E. DANIELSON, Justice, dissenting. LsThe General Assembly has declared that it is the public policy of this state to provide retirement benefits to its judges in order to “attract and retain highly capable members of the legal profession for service in the state judiciary.” Ark. Code Ann. § 24-8-201 (Repl.2014). The forfeiture provisions at issue in this case — Arkansas Code Annotated sections 24-8-215(e) and 24-8-710(b) (Repl.2014) — achieve the exact opposite result. For all practical purposes, they guarantee the departure of the most experienced and seasoned members of the Arkansas judiciary — including, of course, the esteemed circuit judges who are the appellants in this case, three of whom were recently reelected by the voters in their districts and now face essentially forced retirement because the General Assembly believes it knows better than the voters. The forfeiture provisions accomplish this goal in a way that offends the Arkansas Constitution and the principle of equal protection. Accordingly, I dissent. First, the majority correctly notes that, where the constitution itself prescribes in detail the qualifications for office, the General Assembly may not add to or diminish them. See, e.g., Mississippi Cty. v. Green, 200 Ark. 204, 138 S.W.2d 377 (1940). Regulation on the subject inserted into the constitution operates as an implied restriction on the power of the legislature to impose additional qualifications. See id. Stated simply, “[wjhere specific qualifications for office are listed in both the Arkansas Constitution and a statute, the constitution controls and voids the statute.” Daniels v. Dennis, 365 Ark. 338, 340, 229 S.W.3d 880, 882 (2006). The majority likewise acknowledges that the General Assembly cannot do indirectly what the constitution prohibits it from doing directly. See, e.g., Gravett v. Villines, 314 Ark. 320, 862 S.W.2d 260 (1993); Cragar v. Thompson, 212 Ark. 178, 205|S.W.2d 180 (1947). However, the majority fails to apply this principle and erroneously concludes, without any real analysis, that the forfeiture provisions do not impose an indirect qualification for holding judicial office. I cannot agree. The maxim that the legislature cannot accomplish indirectly what it cannot accomplish directly is more than a mere saying. This firmly established principle operates as a restraint on the authority of the legislature, which, there can be no doubt, is a creature of the constitution, owes its existence to the constitution, and derives its powers from the constitution. See Rison v. Farr, 24 Ark. 161 (1865). In Rison, this court considered the constitutionality of a legislative enactment that required a voter to take an oath that, among other things, “he has not voluntarily borne arms against the United States or this state, nor aided, directly or indirectly, the so-called confederate authorities since the 18th day of April, 1864.” Id. at 170. The court determined that this portion of the act was “repugnant to, and in open conflict with the constitution, and in every point of view [was] an entrenchment upon the rights secured by the fundamental law of this state, and [was] therefore absolutely null and void.” Id. at 176. This was because the Arkansas Constitution fixed the qualifications for voters, “and these qualifications cannot be added to by legislative enactment.” Id. at 170. Importantly, this court made clear that an indirect addition of a qualification is just as repugnant to the constitution as a direct one: [Although this part of the law is professedly enacted, “To provide the manner of holding elections,” it is, in effect, nothing but a prohibition upon the right to vote as secured by the constitution; and is of the same import as an affirmative provision that no person who has voluntarily borne arms against the United States, or this state, or aided the so-called confederate authorities, since the 18th day of April, 1864, shall be allowed to vote at any election in the state of Arkansas. And to admit that the legislature may do this, would be to declare that part of the constitution which defines the qualifications of a |snvoter, absolutely nugatory, and would turn section 2 of article IV, of our constitution into the merest nonsense. And clearly, if the legislature cannot, by direct legislation, prohibit those who possess the constitutional qualification to vote, from exercising the elective franchise, that end cannot be accomplished by indirect legislation. The legislature cannot, under color of regulating the manner of holding elections, which to some extent that body has a right to do, impose such restrictions as will have the effect to take away the right to vote as secured by the constitution. Id. at 172 (emphasis added). Similarly, if the legislature cannot, by direct legislation, prohibit those who possess the constitutional qualifications to hold judicial office from doing so, that end cannot be accomplished by indirect legislation. The legislature cannot, under color of regulating judicial-retirement benefits, which to some extent that body has a right to do, impose such restrictions as will have the effect of denying eligibility for office. Rison is controlling, and this court is not free to ignore a legislative overreach simply because the majority likes the result. The forfeiture provisions are repugnant to the constitution because they indirectly add a qualification for holding judicial office not found in amendment 80, section 16. Moreover, the majority is incorrect in stating that a judge may “freely” seek reelection and serve in office despite the application of the forfeiture provisions. The majority is likewise wrong in suggesting that retirement benefits are entirely a matter of grace bestowed by the General Assembly. It is settled Arkansas law that a retirement allowance financed over a period of years by the joint contributions of the employer and the employee represents compensation rather than a mere gratuity. See, e.g., Jones v. Cheney, 253 Ark. 926, 489 S.W.2d 785 (1973) (citing Daggett v. St. Francis Levee Dist., 226 Ark. 545, 291 S.W.2d 254 (1956)). As such, it is a vested right not subject to impairment. See id. To |31 forfeit that right is not free.[1] Furthermore, the proposition that the forfeiture provisions merely govern eligibility for retirement benefits misses the point entirely; when a judge is vested in the retirement system, his or her eligibility for retirement benefits has already been established, not to mention his or her eligibility to hold judicial office. Second, as the majority acknowledges, equal protection requires “that classification rest on real and not feigned differences, that the distinctions have some relevance to the purpose for which the classification is made, and that their treatment be not so disparate as to be arbitrary.” Rose v. Ark. State Plant Bd., 363 Ark. 281, 293, 213 S.W.3d 607, 617 (2005). The forfeiture provisions simply do not pass this test. They do not prevent older people in general from serving as judges; rather, they prevent older people with experience as judges from continuing to serve as judges. This is so because a person can run for and be elected as a judge for the first time after attaining the age of seventy. Pursuant to sections 24-8-215(d) and 24-8-710(a), a judge is not eligible for retirement benefits until he or she accumulates eight years of actual service. Further, under sections 24-8-215(c)(2)(A) and 24-8-710(b)(2)(A), a judge who is not eligible to retire at age seventy may continue to serve, without forfeiting retirement benefits, until the completion of the term of office in which he or she has sufficient service to retire. Consequently, a supreme court justice or court of appeals judge who takes office for the first time at seventy years of age or even older is entitled to serve a full eight-year term Issbefore being required to retire or forfeit benefits. A circuit judge elected at that age is entitled to serve two full six-year terms — a total of twelve years — before being required to retire or forfeit benefits. Alternatively, a person may serve one six-year term as a circuit judge and one eight-year term as a supreme court justice or court of appeals judge — a.total of fourteen years — before being required to retire or forfeit benefits. Again, there is no age limit on taking the bench as a first-time judge. Clearly, the forfeiture provisions result in disparate treatment between those who are elected at a relatively early age and those who are elected later in life. I recognize that “perfection is, by no means required” on rational-basis review. Vance v. Bradley, 440 U.S. 93, 108, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979) (quoting Phillips Chem. Co. v. Dumas Indep. Sch. Dist, 361 U.S. 376, 385, 80 S.Ct. 474, 4 L.Ed.2d 384 (1960)). However, the forfeiture provisions are not merely underinclusive or mathematically imprecise. The distinction between those elected earlier in life and those elected later in life has no relevance to the purpose for which the classification was made, and the treatment of those two groups is so disparate as to be arbitrary. See Rose, 363 Ark. 281, 213 S.W.3d 607. The law allows an eighty year old to take the bench for the first time and, in certain circumstances, to serve until he or she is ninety-four years old. The fact that the law also insists that our most experienced judges retire at age seventy demonstrates an obvious equal-protection problem.[2] laaln addition, I must point out a glaring inconsistency in the majority opinion. On the one hand, it asserts that the forfeiture provisions do not impose an additional qualification for holding judicial office because they do not impose a mandatory retirement age; instead, they only encourage retirement by regulating eligibility for retirement benefits.[3] On the other hand, in its analysis of the equal-protection issue, the majority cites several cases addressing the constitutionality of provisions imposing a mandatory retirement age. See, e.g., Gregory v. Ashcroft, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (constitutional provision requiring judicial retirement at age seventy); Vance, 440 U.S. 93, 99 S.Ct. 939 (legislation mandating retirement of participants in the Foreign Service retirement system at age sixty); Massachusetts Bd. of Ret. v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (statute requiring retirement of uniformed police officers at age fifty). The majority’s attempt to take two opposing positions in the same opinion highlights the flaws in its reasoning. The majority cannot have it both ways. If the forfeiture provisions impose a mandatory retirement age, they violate amendment 80 by adding a qualification for holding judicial office. If they do not impose a mandatory retirement age, but merely condition eligibility' for benefits on retirement by age seventy, they violate equal protection by resulting in disparate treatment. In this same vein, the majority is simply wrong in its misleading implication that other courts have unanimously upheld judicial-retirement provisions like those at issue here. First, I can find no other case addressing a forfeiture provision promoting judicial retirement |S4at a certain age; it appears that Arkansas stands alone in conditioning eligibility' for judicial-retirement benefits on retirement by a certain age. Second, the vast majority of the cases relied on by the majority, and by Justice Baker in her concurrence, involved constitutional provisions imposing a mandatory retirement age. See Gregory, 501 U.S. 452, 111 S.Ct. 2395 (addressing Art. V, § 26 of the Missouri Constitution); Hatten v. Rains, 854 F.2d 687 (5th Cir. 1988) (addressing Art. V, § 1-a of the Texas Constitution); Maimed v. Thornburgh, 621 F.2d 565 (3d Cir.1980) (addressing Art. V, § 16(b) of the Pennsylvania Constitution); Rubino v. Ghezzi, 512 F.2d 431 (2d Cir.1975) (addressing Art. VI, § 25 of the New York State Constitution); Lerner v. Corbett, 972 F.Supp.2d 676 (M.D.Penn.2013) (addressing Art. V, § 16(b) of the Pennsylvania Constitution); Zielasko v. Ohio, 693 F.Supp. 577 (ND.Ohio 1988) (addressing Art. IV, § 6(C) of the Ohio Constitution); State v. Eyrich, 22 Ohio St.3d 164, 489 N.E.2d 259 (1986) (addressing Art. IV, § 6(C) of the Ohio Constitution); Maresca v. Cuomo, 105 A.D.2d 193, 483 N.Y.S.2d 690 (1984) (addressing Art. VI, § 25(b) of the New York State Constitution); Aronstam v. Cashman, 132 Vt. 538, 325 A.2d 361 (1974) (addressing Ch. II, § 28c of the Vermont Constitution). By contrast, the forfeiture provisions at issue in this case are acts of the legislature, and they actually conflict ■with our constitution, as previously explained in this opinion. The forfeiture provisions are unconstitutional. They conflict with amendment 80 by imposing an additional qualification for holding judicial office, and they suffer the added infirmity of violating equal protection. Together, these provisions constitute one of the most blatantly arbitrary, discriminatory, and punitive laws that I have ever seen. It is worth noting that the forfeiture provisions do not apply to members of the legislative or executive lafibranches or to other public officials; they apply only to certain judges. I do not profess to know what happens to a society that runs off its best and brightest public servants, but it cannot be good, and it certainly is not rational. To aecept the argument that the forfeiture provisions merely encourage retirement at age seventy — or that they do anything short of requiring the retirement of the most experienced members of our judiciary — is to indulge a complete and total fiction. Encouragement is not an accurate descriptor of what the forfeiture provisions accomplish. What they actually convey is: leave or we’ll steal your wallet. The assertion that the forfeiture provisions do not impose a qualification for office because they only govern eligibility for retirement benefits is a similar pretense. The fact of the matter is that the judges who are the appellants in this case are eligible for retirement, and this law makes them ineligible for doing something that everyone agrees they have an absolute constitutional right to do. Retirement benefits are not a “matter of grace”; once they are earned and vested, they represent compensation rather than a mere gratuity. See Jones, 253 Ark. 926, 489 S.W.2d 785. Therefore, the legislature is wrong in its apparent belief that whatever it giveth, it can taketh away. Maybe it is because I am seventy years old myself, but I think that the act of grace here is the long tenure of public service that these judges have given the State of Arkansas, and to them I say thank you. In my opinion, the majority’s analysis sets a dangerous precedent that will lead to unintended consequences. Namely, the legislature could impose any number of requirements for holding judicial office under the guise of regulating judicial-retirement benefits. It could go so far as to condition eligibility for judicial-retirement benefits on |Rfihaving relevant preelection experience — for instance, by requiring twenty years’ experience as a practicing lawyer and ten jury trials under one’s belt. This would quite obviously constitute an additional qualification, but it would nonetheless pass constitutional muster pursuant to this court’s decision today. Going forward, the majority’s ill-advised acceptance of the pretenses upon which the forfeiture provisions rest gives the legislature free rein to do indirectly what it cannot do directly. Today it is forced judicial retirement at age seventy, but I can think of a host of other ways in which the analysis will be used to force a class of people to do or not do something that they have every right to do. The General Assembly may consider me aged and possibly even senile, but I can still spot a constitutional violation when I see one. BRILL, C.J., joins in this dissent. , The majority seems to suggest that, because the appellants were aware of the forfeiture provisions when they were elected, they are now estopped from challenging their constitutionality. There is no support in the law for this notion. . Further evidence of the arbitrariness of the forfeiture provisions is that they do not apply to district judges. See 2007 Ark. Acts 177 (abolishing Arkansas District Judge Retirement System and transferring its powers, duties, and plan liabilities to Arkansas Public Employees’ Retirement System). This distinction between district judges and all other judges likewise has no relevance to the purpose for which the classification was made. . The legislature apparently believes that the forfeiture provisions do more than just encourage retirement: Arkansas Code Annotated section 24-8-224(a) explicitly characterizes the forfeiture provisions as imposing a “mandatory retirement age.”