Robert E. ABNEY, et al., Plaintiffs,

v.

William R. PATTEN, et al., Defendants.

No. CIV–84–44–A.

United States District Court,
W.D. Oklahoma.

Oct. 2, 1987.

Supplemental Opinion Nov. 16, 1987.

Second Supplemental Opinion
April 19, 1988.

Richard R. Thomas, Christopher Lee and Alfred W. Ricciardi, Beus, Gilbert, Wake & Morrill, Phoenix, Ariz., J.R. Randy Baker, McKinney, Stringer & Webster, Oklahoma City, Okl., Michael R. Devitt, Glenn Baylor Jenks and Cathy Holt, Beus, Gilbert, Wake & Morrill, Phoenix, Ariz., for plaintiffs.

Pamela S. Anderson, Sidney G. Dunagan, Oliver S. Howard, Gene C. Buzzard, Gable & Gotwals, Tulsa, Okl., for FDIC.

Lance Stockwell, Boesche, McDermott & Eskridge, Tulsa, Okl., for John L. Paulhamus.

Andrew Coats, Brooke S. Murphy, Harvey D. Ellis, Jr., Crowe & Dunlevy, Oklahoma City, Okl., for Joe Edwards, Eric Gray and Steven Shreder.

Douglas C. McBee and Sally E. Scott, Don G. Holladay, Gretchen A. Harris, Andrews, Davis, Legg Bixler Milsten & Murrah, Oklahoma City, Okl., Rebecca J. Patten, Eglish, Patten, Mitchell & Rife, Norman, Okl., for defendants.

## ORDER

ALLEY, District Judge.

On July 10, 1987, the Court issued an Order directing the FDIC to explain certain actions in connection with settlement negotiations and to designate an FDIC representative with authority to approve a settlement. On August 7, 1987, the FDIC filed its response. The response failed to address the Court's first direction, the explanation concerning settlement negotiations, and stated as to the second that it would not comply with the order, for the Court had exceeded the authority conferred

on it by Rule 16(c)(7) of the Federal Rules of Civil Procedure.

In its August 24, 1987 Order, 696 F.Supp. 567, the Court vacated its first direction and found, as to the second, that requiring the designation of an FDIC representative was within its authority and further that the designation was necessary under the circumstances to insure the FDIC's compliance with Local Rule of Court 17.[1] The validity of the July 10 Order is not now before the Court for decision, but will be discussed below in another connection. Presented for consideration at this time are the following three issues:

1) what the appropriate sanction for the FDIC's disobedience of the July 10 Order should be;

2) whether sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure should be imposed against Messrs. Edwards, Gray, Shreder and Paulhamus for proffering the August 17 Response; and

3) whether the Court should commence an action either under Local Rule 4 or the rules of the state bar association for a violation of Disciplinary Rule 7–106.

The Court held a hearing on these three issues on September 18, 1987 and the findings are enumerated below.

### Sanctions Against FDIC

The FDIC did not comply with the July 10 Order nor did it seek further review of the order by this Court or by the Court of Appeals for the Tenth Circuit through an extraordinary writ.[2] The language of the Order clearly and succinctly set out the possible consequences of such disobedience: "...the Court may *sua sponte* consider appropriate sanctions, which may include entry of an order of default in favor of plaintiffs and against FDIC."

FDIC asserts that it attempted to comply with the order but could not do so. Mr. Paulhamus states in an affidavit that, "[o]n or about July 27, 1987, I called Judge Alley's Law Clerk and asked her to speak to the Judge to discuss the FDIC's request for an audience regarding clarification of the July 10, Order." The "audience" was denied. The message given to the Court at the time was that Mr. Paulhamus wanted to discuss his inability to persuade his client to comply, that his influence was not that great. Mr. Paulhamus now asserts in his affidavit that the conference was not to be ex parte in nature, but that he specifically asked to include representatives from the other parties, and their counsel. At the hearing, the Court polled the other counsel in this regard. All but one denied any communication from Mr. Paulhamus about this proposed audience, and the one could recall none. Such a request, even if made, means little where the initiating lawyer has no unilateral ability to carry it off. In a case such as this, where the parties and counsel live throughout the country and are many, it hardly seems credible that a request would be made prior to procuring at least a tentative consent from the others involved. The Paulhamus affidavit is suspect, to say the least.

---

1. At the hearing, counsel for Messrs. Edwards, Gray, Shreder and Paulhamus told the Court that the decision not to pursue review of the order before the Court of Appeals nor comply with the order was made by FDIC and not by counsel. No one was able to identify the person within the FDIC who made this decision. This state of affairs supports the Court's decision that the designation and identification of an *individual* within the FDIC with settlement authority is necessary for the settlement process to be efficacious. Hitherto, FDIC's management of the process in this and other cases has been to pin the opponent down while itself remaining free to repudiate field representatives' recommendations. By design, their internal operations have been anonymous and carapacial. These qualities have led to many bitter expressions to the Court by lawyers who oppose the FDIC in litigation, and may tend to explain why more than 100 members of the bar attended the September 18th hearing as spectators.

2. FDIC argues that it was precluded from seeking review of the order by this Court due to the language in the order that delays would not be countenanced. However, the FDIC moved for reconsideration of a similar order in *FDIC v. Malka Production Co. Inc.,* CIV–87–1065–A, within the time specified for a response to the Order. This same option was open to FDIC in the instant case. In *Malka,* the FDIC request for reconsideration laid out all sorts of reasons why the order was erroneous; but on the response day, FDIC obeyed it.

■] Additionally, the FDIC asserts that it can now comply with the order since the Court relieved the FDIC from the requirement of submitting the detailed explanation of the settlement negotiations. The Court finds that the FDIC's conceded current ability to comply with the second part of the July 10 Order is evidence that it could have complied with it on August 24, 1987, but simply chose not to do so. Thus, the Court finds the FDIC's August 7 Response to be a continuation of its policy of persistent, consistent non-compliance with Local Rule of Court 17. None of its arguments abrogate the FDIC's disobedience of this Court's order, a disobedience that, according to the briefs on behalf of FDIC's retained counsel, was elected by FDIC in total disregard of the specific recommendations of those counsel.

Accordingly, at trial, if one is held, FDIC will be barred from defending. The plaintiffs will be required to put on their cases-in-chief, including presentation of evidence on the quantum of damages; however, the FDIC will not be allowed to cross-examine or to offer evidence in opposition to plaintiffs' claims. *See* Rule 37(b)(2)(B), in conjunction with Rule 55(e) of the Federal Rules of Civil Procedure. Since the FDIC has now designated an individual with the requisite settlement authority, the Court will schedule an additional settlement conference in this case. The FDIC will defray the costs of the attendance of the other parties' representatives and their counsel at that conference.

### Claims of Respondents

Although the Court has already determined the validity of its Order of July 10, 1987, three of the arguments presented on behalf of the respondents call for comment.

1. As is pointed out in both briefs on behalf of respondents, the instant case is related to litigation in state court in Cleveland County and in the federal bankruptcy court in Arizona. Obviously this Court has no authority over the other litigation; but equally obviously the claims pressed on behalf of FDIC in the other cases affect the settlement posture of the instant case.

Facilitating settlement discussion in the instant case obliges consideration of the others. For this reason, the Court's Order directed FDIC to designate someone who could settle the instant case from the defense standpoint, and release claims against the parties in this case from a claimant's standpoint. Without consideration of the latter, the former is futile.

This aspect of the Order drew a complaint from respondents that the Court was attempting to assert authority over a "nonparty" to the instant litigation, namely, FDIC in its corporate capacity.

■ The Protean mutability of FDIC between its self-described FDIC/Receiver and FDIC/Corporate roles is well recognized for some purposes, for example, service of process and removability of causes from state to federal courts. Differentiation of particular legal incidents of FDIC participation in one capacity or the other is so well recognized in federal law that citation is not required. This differentiation based on function should not be magnified into a concept that there are two FDICs. Chapter 16 of Title 12 of the United States Code creates but one FDIC, with but one governance. FDIC in its corporate capacity is the yang and FDIC as receiver the yin of a single juridical entity. When the FDIC is being sued as receiver for a failed bank and asserts counterclaims based on assets held by the corporation, elementary considerations of fairness should preclude its being able to whipsaw its opponent on the pretense it is two entities, either of which is entitled to disclaim or repudiate the negotiation or litigation position of the other, or profess ignorance about the position or even the internal operations of the other. These things have happened in cases before this Court. The proposition that FDIC is two discrete juridical entities is, in the opinion of this Court, merely an FDIC *ipse dixit* without sound basis in law, even giving consideration to those cases that recognize procedural and substantive differentiations based upon particular functions.

There are many other situations in which parties appear in different functional roles in the same case. These include a parent

appearing as next friend of a minor plaintiff and in his or her own capacity in a case of personal injury inflicted on the child, or a guardian appearing both on behalf of his ward and in his own right, or a personal representative who also shares in the estate appearing for the estate. An examination of rights and liabilities may properly be based on status with respect to particular transactions and particular legal issues; but, when Mr. Doe has a legal interest both in his own right and as a next friend of his child, he is still simply Mr. Doe.

■ 2. The respondent FDIC has argued that the first requirement under the Court's July 10 Order was invalid because it intruded on attorney-client privilege and the work product doctrine. Respondent attorneys Edwards, Gray and Shreder similarly urge that no Rule 11 sanctions should be applied because a plausible argument along the same lines could be advanced. Paraphrased, the argument is that any statement of the reasons why plaintiff's settlement proposals were unacceptable to FDIC implicate attorney-client confidential communications, the transmission of information and advice reciprocally, and the independent evaluations of counsel represented in work product.

First, this argument ignores the disclosure of reasons made by FDIC in its July 2, 1987 settlement conference with counsel for plaintiffs and counsel for the Patten estate. As reported by counsel for plaintiffs: "After a lengthy discussion, the FDIC, for the first time, informed plaintiffs that it was not interested in any potential settlement proposal which would contain a provision requiring that the FDIC dismiss all potential claims against the plaintiffs. Therefore all settlement negotiations are currently stalemated and the prospects for settlement are dim." FDIC already asserted this "nonnegotiable" position in negotiations. Who decided that? To whom might plaintiffs present their case in negotiations? The carapacial nature of FDIC processes is remarkable; the Court has already noted that at the September 18 hearing not one of the counsel for FDIC could even identify the FDIC official who made the decision to defy the Court's July 10 Order. The burden of the first obligation under the July 10 Order was not merely a statement of reasons, but of identification of the FDIC employee or employees who rejected plaintiffs' offers so that those employees could be reasoned with.

■ Further, it seems to the Court that obliging a statement of reasons in a negotiation impasse is no different for purposes of attorney-client relations than obliging the submission of contentions and defenses in the preparation of a pretrial order. To be sure, in settlement negotiations a party has the legal right to say, "Through sheer cussedness and stubbornness, I absolutely refuse to settle this case." That in itself is a reason, and its disclosure advances the proceedings. The opponent knows where to put his resources and how to expend his time, which would not be in vain pursuit of further negotiations. If FDIC declined plaintiffs' offer merely because it declined to enter into any discussion of a global settlement affecting all three related cases, that was its privilege. Reporting that and identifying the official who made the decision does not implicate the attorney-client privilege.

■ Finally and most fundamentally, the respondents' arguments about attorney-client privilege and work product seem wide of the mark because these have no applicability until invoked. *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). The attorney-client privilege, by far the more fundamental of the two doctrines, has never been a self-executing one. When the issue arises in the courtroom, an objection is required. Otherwise, as is evident by *Weintraub*, an invocation is required. It is entirely up to the client whether to invoke it or not; and FDIC with respect to any particular communication, either from its officials to its attorneys or vice versa, has not submitted any invocation to this very day. There was nothing improper in the Court's first direction; there was nothing in the direction that inherently implicated the privilege; and if the privilege were in fact implicated,

an invocation was required to make it operative. Instead, in its August 7 Response, the FDIC chose merely to "stonewall."

3. In its brief and the also in oral argument delivered by Mr. Dunagan, the FDIC has argued that something about the July 10 Order compelled FDIC to capitulate in the settlement process. This line of reasoning is the mere erection of a straw man. Compelled settlement is a legal impossibility and nothing in the Order suggests that that be done. Indeed in its penultimate full paragraph the Order, the Court laid out the direction of the case in the event settlement efforts failed.

*Rule Eleven Sanctions Against Counsel*

Rule 11 of the Federal Rules of Civil Procedure requires counsel to make a reasonable inquiry into whether his pleading is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law," before he files it.

This Court has no quarrel with the proposition that the briefs submitted in response to the Court's Order of August 24, 1987 are for the most part tenable, even though the arguments are unpersuasive. If these arguments had been presented in the August 7 Response as authority for non-compliance and as part of an open and honest attempt to secure review, the Court would be satisfied that the Rule 11 standard of reasonable inquiry had been met. However, none of this authority was submitted on August 7. Reasonable inquiry must be made *prior* to the filing of the pleading in question. Advisory Committee Note, 97 F.R.D. 198, 199. Counsel may not "plead now and analyze later." *Rodgers v. Lincoln Towing Service*, 596 F.Supp. 13, 27 (N.D.Ill. 1984) aff'd 771 F.2d 194 (7th Cir.1985).

█ The pleading as filed was wanting of any authority other than the following: "[f]urther, the FDIC believes the Order to be in excess of the authority over settlement negotiations conferred on the Court by the Fed.R.Civ.P. 16(c)(7)." It is not enough that lawyer or client simply *believe* the law is or ought to be a certain way; Rule 11 requires reasonable inquiry. *Sny-*

*der v. IRS,* 596 F.Supp. 240, 251 (N.D.Ind. 1984).

█ The lack of authority submitted with the pleading led the Court to question whether reasonable prior inquiry was made into its validity. The Court scheduled the September 18 hearing in part to answer this question, and it put the parties on notice of this issue by addressing it specifically in its August 24 Order.

In answer to the August 24 Order and in preparation for the September 18 hearing, counsel explained the circumstances surrounding the filing of the August 7 Response. Rather than bolstering the position of Messrs. Edwards, Gray, Shreder and Paulhamus, the explanation contradicts the claim that reasonable inquiry was made prior to the filing of the response. Counsel Edwards, Gray and Shreder have stated that the decision to file a response simply disobeying the Court's July 10 Order was made by the FDIC *on its own initiative and against the advice of counsel two days before the response date.* The brief for Messrs. Edwards, Gray and Shreder is illuminating:

"Respondent Counsel were formally engaged by the FDIC in this matter on July 17, 1987, and entered their appearances on July 20, 1987. After their engagement, Respondent Counsel conducted detailed and extensive legal research regarding the July 10th Order in light of the FDIC/Receiver's objections to it, and advised the FDIC to utilize one of two approaches in response to the July 10th Order, i.e. to *either* (a) fully and faithfully comply with the Order, or (b) test the validity of the July 10th Order by seeking a writ of prohibition in the Tenth Circuit and a stay of the Order. The FDIC/Receiver initially chose the second option. Accordingly, the petition for writ of prohibition and supporting authorities was prepared, along with a motion to stay, and Respondent Counsel believed both would be filed. On July 31, 1987 the FDIC/Receiver decided that it would attempt to comply with the Court's Order, thus choosing the *first* option recommended by Respondent Counsel.

"On August 5, 1987, two days before the Response was filed, the FDIC/Receiver made clear that it would or could neither fully comply with the Order nor file the petition for writ of prohibition, thus rejecting both options recommended by Respondent Counsel. The FDIC/Receiver was then left with no viable procedural alternative in the opinion of Respondent Counsel,[2] as this Court's July 10th Order made unequivocally clear that no delay would be tolerated.

"Respondent Counsel believed that *some* response to the Court's July 10th Order, at least advising the Court of the FDIC/Receiver's position, was preferable to silent noncompliance, both a a courtesy to the Court and to preserve the FDIC/Receiver's objections on appeal. Respondent Counsel, by filing the August 7th Response to the Court's order, merely *reported* the FDIC/Receiver's decision that it would or could not fully comply with the Court's Order, and stated that the FDIC/Receiver's position that the Order exceeded the Court's authority.

> "[2] Consideration was given to partial compliance and a motion to vacate, but rejected in light of the provisions of the Court's Order that the Court expected full compliance and no delays would be countenanced."

Moreover, when the Court asked for documentary evidence concerning "reasonable inquiry" at the hearing, no time records, in-office memos, or evidence of research of any kind was available for presentation to the Court for its review.[3] When faced with seemingly uncomprehending counsel, no documentary evidence addressing the issue, the vague assurances of counsel that somebody did some research in support of the August 7 Response at some time and nothing more, the Court has no hesitancy in finding that no reasonable inquiry was made prior to the filing of the August 7 Response in support of *it*. The arguments presented to support the response are mere afterthought makeweight.

---

**3.** Counsel did submit a draft Petition for Writ of Mandamus or Prohibition for the Court's consideration. A good deal of time and energy went into the research and preparation of this

■ The August 7 Response was proffered by Messrs. Edwards, Gray, Shreder and Paulhamus, according to the signature blocks. Only Messrs. Shreder and Paulhamus actually signed it. Sanctions are imposable on lawyers whose names are typed on the pleading, as well as the signators, when a determination is made that they acted together in signing the pleading. *Alcan Aluminum Corp. v. Lyntel Products*, 656 F.Supp. 1138, 1140 (N.D.Ill.1987). Otherwise, partners could effectively evade Rule 11 responsibilities simply by designating a sacrificial associate to sign things. At the hearing, it was determined that Messrs. Edwards, Shreder, and Paulhamus conferred and joined together in the proffer of the pleadings. Mr. Edwards expressly conceded his responsibility for the pleading, shared with Mr. Shreder. However, Mr. Gray, who was not consulted because he was on vacation, has an "alibi" and no sanctions may be imposed against him.

The Court hereby finds that Messrs. Edwards, Shreder and Paulhamus are in violation of Rule 11 and orders them to defray the costs of counsels' presence at the September 18th hearing, not to include reimbursement of FDIC's counsel. These costs may not be passed on to the litigants or anyone else; however, the amount may be apportioned among Messrs. Edwards, Shreder, and Paulhamus as they see fit. Any disagreement about the reasonableness of the costs may be submitted to the Court. Unless an unresolved question of reasonableness is then before the Court, not later than October 16, 1987 these three counsel will report to the Court evidence of their respective payments and will present affidavits that they have received no reimbursement from any source.

### Local Rule of Court 4 and Disciplinary Rule 7–106

After considering the briefs submitted and listening to the arguments of counsel, the Court declines to commence an action

---

document. However, this petition was not filed and the Court's inquiry is into the research supporting the response actually filed.

either under Local Rule of Court 4 or the rules of the State Bar Association for Violation of Rule 7–106.

## SUPPLEMENT TO OCTOBER 2, 1987 ORDER

Since the dissemination of the October 2, 1987 order, the case of *In re Grand Jury Proceedings, (Appeal of Trawick H. Stubbs, Jr.)*, 831 F.2d 222 No. 87–8249 (11th Cir.1987) was decided. It is highly illuminating with respect to this Court's conclusion that FDICs' complaint about the Court's Order of July 10, 1987 on grounds of intrusion into attorney-client privilege and attorney work product is specious.

In the *Stubbs* case, a target of grand jury investigation moved to quash a subpoena under which his attorney was to be brought before the grand jury. His grounds were that the very process of summoning the attorney was impermissibly intrusive upon the attorney-client privilege. In comparing *Stubbs* with the instant case, one should note that Stubbs' situation was far more delicate because it was a criminal case.

Stubbs moved to quash the subpoena of his attorney; the District Court denied his motion; and the Court of Appeals for the Eleventh Circuit affirmed the District Court, for similar reasons, although more emphatically stated, as in this Court's prior order. This Court emphasized that the attorney-client privilege is inchoate until it is invoked, and that it has never been invoked in this case. The attorney-client privilege argument in opposition to the validity of the Court's original order assumes that there were pertinent attorney-client communications, that the client developed a position based thereon, and that the position should not be revealed because of the communications. This is a purely hypothetical situation. It is equally likely, hypothetically, that the FDIC position was either so sound, or so adamantly held if unsound, that FDIC would want it to be communicated in order to either dominate settlement proceedings or formally terminate them.

In *Stubbs* the Court of Appeals observed:

"What Stubbs asked us to do is pass on a hypothetical case. That is, he asked us to assume the following facts: (1) that Schwind appears before the grand jury as commanded by his subpoenas; (2) that the grand jury seeks information protected by the attorney-client privilege, *e.g.*, information that was not acquired by Schwind in the furtherance of a criminal scheme to help Stubbs avoid federal income taxes; (3) but notwithstanding Stubbs' instruction that he assert the attorney-client privilege, Schwind does not assert the privilege; (4) that Schwind discloses the privileged information to the grand jury. Article III of the Constitution precludes us from passing on the merits of such a hypothetical case, ..."

Just because a subpoena or a court order might conceivably, under some imaginable state of facts, intrude in some possible way upon the attorney-client privilege does not render it *ipso facto* invalid. The Court of Appeals for the Eleventh Circuit recognizes that at some point events may develop so as to permit a ruling on a claim of attorney-client privilege, but that that point is not reached by the mere issuance of the subpoena. It seems to this Court that FDIC is in an even feebler position than was the movant Stubbs to assert the facial invalidity of the Court's order without more.

## SECOND SUPPLEMENT TO OCTOBER 2, 1987 ORDER

Since the dissemination of the October 2, 1987 order, orders have issued in this district that required the government over its objection to provide a representative with full settlement authority for attendance at the settlement conference and denied a stay to allow the government an immediate appeal. *See Goodson v. United States of America*, CIV–87–1519–W (April 13, 1988).