SLIP OPINION

Cite as 2016 Ark. 272

# SUPREME COURT OF ARKANSAS

No. CV–16–85

MICHAEL LANDERS, DAVID GUTHRIE, KENNETH JOHNSON, AND J.W. LOONEY

APPELLANTS

V.

GAIL H. STONE, EXECUTIVE DIRECTOR OF THE ARKANSAS JUDICIAL RETIREMENT SYSTEM; ROBERT EDWARDS, CHAIRMAN OF THE ARKANSAS JUDICIAL RETIREMENT SYSTEM, CIRCUIT JUDGE; GAYLE FORD, CIRCUIT JUDGE (RETIRED); MARK HEWETT, CIRCUIT JUDGE (RETIRED); CHARLES YEARGAN, CIRCUIT JUDGE; AND MARCIA HEARNSBERGER, CIRCUIT JUDGE

APPELLEES

Opinion Delivered: June 23, 2016

APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [60CV-2015-2989]

HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE

AFFIRMED.

**COURTNEY HUDSON GOODSON, Associate Justice**

The resolution of this appeal, involving a challenge to the constitutionality of this State's judicial-retirement statutes, confirms the future identity and character of our judiciary. By this opinion, we join the unanimous voice of the courts in this country, including the United States Supreme Court, which hold that judicial-retirement provisions are constitutional.

Appellants, Judges Michael Landers, David Guthrie, Kenneth Johnson, and J.W. Looney, appeal the order entered by the Pulaski County Circuit Court granting summary judgment in favor of appellees Gail Stone, Executive Director of the Arkansas Judicial

Retirement System; Judge Robert Edwards, its Chairman; and Judges Gayle Ford, Mark Hewett, Charles Yeargan, and Marcia Hearnsberger, who are members of the system's board of trustees. In the order granting summary judgment, the circuit court rejected appellants' arguments contesting the forfeiture provisions found in Arkansas Code Annotated sections 24-8-215 and 24-8-710 (Repl. 2014) that pertain to the Arkansas Judicial Retirement System. For reversal, appellants contend that (1) the forfeiture provisions constitute an additional qualification for holding judicial office in violation of the Arkansas Constitution; (2) the statutes violate their rights of equal protection under the law; (3) the statutes appear to provide for an unconstitutional taking without due process of law; and (4) the provisions operate to constructively discharge judges. We affirm the circuit court's decision.

## I. *Factual Background*

The General Assembly established the Arkansas Judicial Retirement System sixty-three years ago with the passage of Act 365 of 1953, which is presently codified at Arkansas Code Annotated sections 24-8-201 et seq. (Repl. 2014). With its enactment, the General Assembly declared that "it is the public policy of the state to provide sufficient retirement and survivors' benefits" for judges and justices "to attract and retain highly capable members of the legal profession for service in the state judiciary." Ark. Code Ann. § 24-8-201. According to the legislative scheme, participation in the plan is mandatory, and each judge and justice covered by the plan contributes a percentage of their annual salary into the retirement system. *See* Ark. Code Ann. §§ 24-8-207(a), 24-8-209(a) & 24-8-706(a). By and large, eligibility for the receipt of retirement benefits is based on years of service, which is set at a minimum of eight years. Ark. Code Ann. § 24-8-215(d). The controversy in this

case concerns the laws providing that any judge who is vested in the judicial retirement system forfeits his or her retirement benefits if the judge runs for, is elected to, and serves in a new term of office after reaching the age of seventy. *See* Ark. Code Ann. §§ 24-8-215(c) & 24-8-710(b).

Three of the appellants are current members of the Arkansas judiciary, while one has retired from the bench. Judge Landers is a circuit judge in the Thirteenth Judicial District, and he was reelected in 2010 for an additional six-year term that expires at the close of 2016. Judge Guthrie is currently serving as a circuit judge in the Thirteenth Judicial District, and he was reelected in 2014 to a six-year term ending in 2020. Similarly, Judge Johnson is a circuit judge who sits in the Tenth Judicial District and was reelected in 2014 for a six-year term that will expire in 2020. Judge Looney is retired from his position as a circuit judge in the Eighteenth Judicial District. Appellants joined in filing a complaint for declaratory judgment seeking a determination that sections 24-8-215(c) and 24-8-710(b) are unconstitutional and are otherwise contrary to the law. Appellants alleged that these provisions violate amendment 80 to the Arkansas Constitution by adding a qualification for serving as a judge. They also asserted that the statutes deny them equal protection, as well as due process of law, as a taking without just compensation. Their complaint included the additional claim that the forfeiture provisions effect a constructive discharge from employment. In the complaint, appellants Landers, Guthrie, and Johnson alleged that they wish to seek reelection when their terms expire but that they had reached the age that

continued service would result in the forfeiture of their retirement benefits.[1] Appellant Looney avowed that he had wanted to run for reelection but that he chose to retire "because of the chilling effect of the forfeiture statute[s]."[2] As relief, appellants sought an injunction to prohibit the enforcement of the statutes.

Appellees responded to the complaint and subsequently moved for summary judgment, asserting that there were no material facts in dispute and that the contested issues involved questions of law. In their motion, they first argued that appellants did not have standing to mount a challenge to the statutes and that their claims were not ripe for review. Appellees also contended that they were entitled to judgment as a matter of law. Appellants also moved for summary judgment. They agreed with appellees that summary disposition was appropriate because the issues raised in their complaint concern purely matters of law. However, appellants disagreed with appellees' assertion that they did not have standing and that their claims were not ripe for review. After a hearing, the circuit court ruled that appellants had standing to seek declaratory relief but that their claims were not well taken. Accordingly, the circuit court granted appellees' motion for summary judgment. This appeal followed.

## II. *Standards of Review*

Generally, on appeal from a summary-judgment disposition, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences

---

[1] This spring, and after the complaint was filed, Judge Landers stood unopposed for reelection and is scheduled to begin a new term on January 1, 2017.

[2] Following his retirement, Judge Looney was appointed as a district judge in Polk County.

are resolved against the moving party. *Ark. State Bd. of Election Comm'rs v. Pulaski Cty. Election Comm'n*, 2014 Ark. 236, 437 S.W.3d 80. However, when the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Waters v. Millsap*, 2015 Ark. 272, 465 S.W.3d 851. As to issues of law, our review is de novo. *Washington Cty. v. Bd. of Trustees*, 2016 Ark. 34, 480 S.W.3d 173.

## III. *Standing*

In their brief, appellees continue to argue, as they did below, that appellants lack standing to challenge the statutes. Appellees contend that appellants do not have standing and that the issues are not ripe for review because the future application of the retirement provisions are contingent on an eligible circuit judge running for election, winning the election, and taking the bench for a new term after reaching the age of seventy. In making this argument, appellees rely on the principle that a declaratory judgment will not be granted unless the danger or dilemma of the plaintiff is present, not contingent on the happening of hypothetical future events; the prejudice to his position must be actual and genuine and not merely possible, speculative, contingent, or remote. *See Nelson v. Ark. Rural Med. Practice Loan & Scholarship Bd.*, 2011 Ark. 491, 385 S.W.3d 762.

We treat the question of standing to sue as a threshold issue. *Grand Valley Ridge, LLC v. Metro. Nat'l Bank*, 2012 Ark. 121, 388 S.W.3d 24. However, this court has held that the issue of standing raised by an appellee is not preserved for appeal in the absence of a cross-appeal. *Gallas v. Alexander*, 371 Ark. 106, 263 S.W.3d 494 (2007). Here, appellees did not file a cross-appeal to contest the circuit court's adverse ruling on this point. Consequently, we decline to address this issue.

SLIP OPINION

IV. *Amendment 80*

As their primary point on appeal, appellants contend that sections 24-8-215(c) and 24-8-710(b) violate amendment 80 to the Arkansas Constitution. They argue that the amendment establishes the qualifications for becoming a judge in this state and that the forfeiture provisions of the statutes add an additional age-based qualification by creating a de facto prohibition against retaining office past the age of seventy. Their argument is based on the principle that the General Assembly does not possess the authority to augment the qualifications contained in the constitution. Appellants assert that, by exacting a penalty on their constitutional eligibility to serve, the laws indirectly accomplish what the General Assembly lacks the direct authority to do.

The retirement provisions found in both section 24-8-215(c) and section 24-8-710(b) generally provide that (1) any judge who turns seventy while on the bench may complete his or her term of office without forfeiting retirement benefits; (2) any judge who is not eligible for retirement benefits may continue to serve until the completion of the term in which he or she receives sufficient time of service to retire without losing benefits; and (3) any judge forfeits retirement benefits who continues to serve after reaching age seventy and after the term in which the judge accrues sufficient service time to retire.

Acts of the legislature are presumed constitutional, and the party challenging the statute has the burden to prove otherwise. *McDaniel v. Spencer*, 2015 Ark. 94, 457 S.W.3d 641. If it is possible to construe a statute as constitutional, we must do so. *Our Cmty., Our Dollars v. Bullock*, 2014 Ark. 457, 452 S.W.3d 552. An act will be struck down only when

SLIP OPINION

there is a clear incompatibility between the act and the constitution. *Bakalekos v. Furlow*, 2011 Ark. 505, 410 S.W.3d 564.

The qualifications for judicial office are found in amendment 80, section 16 of the constitution. The requirements are relatively simple. Justices of the supreme court and judges of the court of appeals are required to be licensed attorneys in Arkansas for eight years immediately preceding the date of taking office, while circuit judges must be licensed attorneys in this state for six years before assuming the bench. Ark. Const. amend. 80, § 16(A) & (B). This requirement for district judges is set at four years. *Id.* § 16(C). The amendment also contains geographic limitations. *Id.* § 16(D).

It is beyond dispute that the General Assembly does not have the authority to impose qualifications for judicial office in addition to those set out in the constitution. For instance, in *Daniels v. Dennis*, 365 Ark. 338, 229 S.W.3d 880 (2006), this court held that Act 1148 of 2005, which provided that a person appointed as a circuit judge was ineligible to run as a candidate in the same judicial district to which she was appointed, was unconstitutional because it added a qualification required of candidates for judicial office. Also, we have held that a statute prohibiting a judge who had been removed from office from thereafter being appointed or elected to serve as judge was unconstitutional because the law imposed an additional qualification. *Proctor v. Daniels*, 2010 Ark. 206, 392 S.W.3d 360.

We have applied this rule of law in other contexts, as well. In *Allred v. McLoud*, 343 Ark. 35, 31 S.W.3d 836 (2000), this court held that a local initiative that fixed term limits for county officials at five two-year terms was unconstitutional because it added a new qualification for candidacy that was not contained in the Arkansas Constitution. In the case

of *Mississippi County v. Green*, 200 Ark. 204, 138 S.W.2d 377 (1940), we noted that article 7, section 29 of the Arkansas Constitution fixed the qualifications for county judge, and we held unconstitutional a statute requiring a county judge to be "learned in the law," because it provided an additional qualification not found in the Arkansas Constitution. This court recently held that the voter-identification law was unconstitutional on its face because it imposed a qualification for voting beyond what is recognized by the constitution. *Martin v. Kohls*, 2014 Ark. 427, 444 S.W.3d 844.

It is equally understood that the General Assembly cannot accomplish indirectly what it may not do directly. An example of this rule of law is found in *Gravett v. Villines*, 314 Ark. 320, 862 S.W.2d 260 (1993). There, this court held that an ordinance passed by a quorum court removing the operation of a county jail from the office of the sheriff to the office of the county judge was unconstitutional because, under the circumstances, such a measure had to be submitted to the voters at an election. As a logical corollary to that holding, we declared that a related ordinance removing funding from the sheriff's office to achieve the operational transfer of the jail was also unconstitutional because the quorum court as a "legislative body cannot do indirectly that which the constitution prohibits it from doing directly." *Gravett*, 314 Ark. at 327, 862 S.W.2d at 264.

While the principles appellants rely on are indeed firmly established in our jurisprudence, they have no application here. In *Dennis* and *Proctor*, the statutes prohibited persons who were qualified under the constitution from being elected to, and serving in, judicial office. Likewise, in *Allred*, the law barred a constitutionally qualified incumbent from running for office, and in *Green*, the statute banned a qualified person from serving as

SLIP OPINION

a county judge. In *Kohls*, the statute was deemed unconstitutional because it prevented a duly registered voter from exercising the right to vote. In each of these situations, the statutes worked an absolute disqualification not found in the constitution. By contrast here, the statutes do not suffer from the same infirmity because the laws impose neither a direct nor an indirect qualification for holding judicial office. The statutes do not prohibit any judge from holding office past the age of seventy. Judges at that age may freely seek reelection and may serve in office. If elected past age seventy, no judge is subject to being ousted from his or her position as a result of the statutes. Instead, the laws pertain only to a judge's eligibility to receive retirement benefits, which are, after all, a matter of grace bestowed by the General Assembly.[3] The age-seventy eligibility requirement found in section 24-8-215(c) first appeared in Act 139 of 1965, and it has been a continuing part of the retirement system since that time. Therefore, for over fifty years, the General Assembly has conditioned the eligibility for receiving benefits upon retirement at the age of seventy. Eligibility for benefits demonstrably is not the equivalent of a qualification for holding judicial office. Simply stated, the statutes do not constitute an additional qualification in contravention of the constitution. Accordingly, we affirm the circuit court's ruling that the statutes do not violate amendment 80.

---

[3] In *Jones v. Cheney*, 253 Ark. 926, 489 S.W.2d 785 (1973), this court held that, when the General Assembly establishes a retirement system to which employees make contributions, it may not constitutionally impair the rights of those employees with legislation enacted *after* their rights become vested. Here, the legislation was in effect decades before appellants took office, much less before they became vested in the retirement system. Consequently, the dissenting justices' preoccupation with the concept of vested property rights is entirely misplaced. *See Robinson v. Taylor*, 342 Ark. 459, 29 S.W.3d 691 (2000). We also observe that, when appellants became judges, they were on notice that this requirement was in place.

V. *Equal Protection*

Appellants' second argument on appeal is that the forfeiture provisions of the statutes offend the equal protection clauses of the United States and Arkansas Constitutions. Their contention is that, if the goal of the legislation is to prevent older persons from serving as judges, the means chosen by the General Assembly do not accomplish that end because the system allows someone who is first elected as a judge after the age of seventy to serve until eligibility for retirement is achieved. Ark. Code Ann. §§ 24-8-215(c)(2)(A) & 24-8-710(b)(2)(A). They assert that the statutory scheme prevents only experienced older persons from serving as judges.

Appellants correctly concede that the statutes need only pass a rational-basis test to withstand scrutiny under the equal-protection clauses. When considering an equal-protection challenge to a state legislative classification scheme that does not involve either a "suspect" classification or a "fundamental" right, the proper test is whether the classification bears some rational relationship to a permissible state objective. *In re Estate of Epperson*, 284 Ark. 35, 38, 679 S.W.2d 792, 793–94 (1984) (citing *Dandridge v. Williams*, 397 U.S. 471 (1970)). Age is not a suspect classification under the Equal Protection Clause. *Gregory v. Ashcroft*, 501 U.S. 452 (1991); *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976). Neither the right of governmental employment nor the right to run for elective office is a fundamental right. *Trafelet v. Thompson*, 594 F.2d 623 (7th Cir. 1979) (citing M*urgia*, *supra*, and *Bullock v. Carter*, 405 U.S. 134 (1972)); *see also Allen v. State*, 327 Ark. 350, 939 S.W.2d 270 (1997) (observing that holding public office is a political privilege and not a civil right). Judicial office is no exception. *Id*. Accordingly, the applicable standard is whether the

classification is rationally related to a legitimate legislative purpose. *Gregory*, *supra*; *Murgia*, *supra*.

Equal protection does not require that persons be dealt with identically; it requires only that classification rest on real and not feigned differences, that the distinctions have some relevance to the purpose for which the classification is made, and that their treatment be not so disparate as to be arbitrary. *McDaniel v. Spencer*, 2015 Ark. 94, 457 S.W.3d 641. When reviewing an equal-protection challenge, it is not this court's role to discover the actual basis for the legislation. *Graves v. Greene Cty.*, 2013 Ark. 493, 430 S.W.3d 722. Rather, we consider whether there is any rational basis that demonstrates the possibility of a deliberate nexus with state objectives so that legislation is not the product of arbitrary and capricious government purposes. *Cent. Okla. Pipeline, Inc. v. Hawk Field Servs.*, 2012 Ark. 157, 400 S.W.3d 701. If we determine that any rational basis exists, the statute will withstand constitutional challenge. *McLane S., Inc. v. Davis*, 366 Ark. 164, 223 S.W.3d 674 (2006). Under the rational-basis test, legislation is presumed constitutional and rationally related to achieving any legitimate governmental objective under any reasonably conceivable fact situation. *Eady v. Lansford*, 351 Ark. 249, 92 S.W.3d 57 (2002). This presumption places the burden on the party challenging the legislation to prove its unconstitutionality. *Whorton v. Dixon*, 363 Ark. 330, 214 S.W.3d 225 (2005).

On several occasions, the United States Supreme Court has taken the opportunity to address equal-protection claims in the context of retirement provisions. In *Murgia*, *supra*, at issue was a Massachusetts statute that mandated the retirement of uniformed state police officers at age fifty. Applying the rational-basis test and recognizing that physical ability

generally declines with age, the Court concluded that the state had a legitimate interest in seeking to protect the public by assuring the physical preparedness of its uniformed police officers. Because the statute furthered that legitimate goal, the Court ruled that there was no denial of equal protection. In its decision, the Court observed that the means chosen to achieve a legitimate goal need not be flawless:

> That the State chooses not to determine fitness more precisely through individualized testing after age fifty is not to say that the objective of assuring physical fitness is not rationally furthered by a maximum-age limitation. It is only to say that with regard to the interest of all concerned, the State perhaps has not chosen the best means to accomplish this purpose. But where rationality is the test, a State "does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." *Dandridge v. Williams*, 397 U.S., at 485, 90 S. Ct., at 1161.

*Murgia*, 427 U.S. at 316.

In *Vance v. Bradley*, 440 U.S. 93 (1979), the Court considered whether Congress had violated the Equal Protection Clause by requiring retirement at age sixty of federal employees covered by the Foreign Service retirement system but not those employees covered by the Civil Service retirement system. A stated purpose for mandating compulsory retirement for persons in the Foreign Service at that age was to remove older persons that may be less dependable than younger persons in facing the rigors of overseas duty. In concluding that the statutory scheme did not violate the Equal Protection Clause, the Court reasoned that the mandatory retirement age of sixty attempts to "stimulate the highest performance in the ranks of the Foreign Service" and found that the mandatory provision was not invalid because it was rationally related to the goal of superior performance. *Vance*, 440 U.S. at 101. In so holding, the Court also recognized that "it was quite rational to avoid the risks connected with having older employees in the Foreign Service" and

"[w]hether or not individual judges may agree with this assessment, it is not for the courts to reject it." *Id.* at 106.

Finally, in *Gregory*, *supra*, the Supreme Court upheld against an equal-protection challenge a Missouri constitutional provision requiring judges to retire at age seventy. There, the Court emphasized that a state's citizens "have a legitimate, indeed compelling, interest in maintaining a judiciary fully capable of performing the demanding tasks that judges must perform," observing that voluntary retirement, impeachment procedures, and the election process may not be sufficient to ensure this objective. *Gregory*, 501 U.S. at 472. Significantly, the Court recognized that

> [t]he Missouri mandatory retirement provision, like all legal classifications, is founded on a generalization. It is far from true that all judges suffer significant deterioration in performance at age 70. It is probably not true that most do. It may not be true at all. But a State "does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect."

*Gregory*, 501 U.S. at 473 (quoting *Murgia*, 427 U.S. at 316).

Even before the decision in *Gregory*, courts across the country had upheld mandatory retirement provisions for state judges. Those decisions include *Hatten v. Rains*, 854 F.2d 687 (5th Cir. 1988); *Malmed v. Thornburgh*, 621 F.2d 565 (3d Cir. 1980); *Trafelet*, *supra*; *Rubino v. Ghezzi*, 512 F.2d 431 (2d Cir. 1975); *Lerner v. Corbett*, 972 F. Supp. 2d 676 (M.D. Penn. 2013); *Zielasko v. Ohio*, 696 F. Supp. 577 (N.D. Ohio 1988); *Saetre v. State*, 398 N.W.2d 538 (Minn. 1986); *O'Neil v. Baine*, 568 S.W.2d 761 (Mo. 1978); *Maresca v. Cuomo*,

483 N.Y.S.2d 690 (N.Y. App. Div. 1984); *State v. Eyrich*, 389 N.E.2d 259 (Ohio 1986);

*Aronstam v. Cashman*, 325 A.2d 361 (Vt. 1974).[4]

It is against this backdrop in the law that appellants assert the narrow argument that

the statutes deny equal protection because the laws permit a person after the age of seventy

to serve as a judge until eligibility for retirement benefits is achieved. However, the

underinclusiveness of a particular provision, or its failure to fully remedy a certain problem,

does not make the provisions unconstitutional. The Supreme Court has been clear on this

point. "Even if the classification involved here is to some extent both underinclusive and

overinclusive, and hence the line drawn by Congress imperfect, it is nevertheless the rule

that in a case like this 'perfection is by no means required.'" *Vance*, 440 U.S. at 108 (quoting

*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 51 (1973)). *See also Murgia*, 427 U.S.

at 316 (stating that, where rationality is the test, a State "does not violate the Equal

Protection Clause merely because the classifications made by its law are imperfect");

*Dandridge*, 397 U.S. at 485 (observing that a law does not offend the Constitution simply

because the classification is not made with "mathematical nicety").

Further, when we examine the justifications offered by appellees for encouraging

retirement at age seventy, we can only conclude that the statutes bear a rational relationship

to legitimate legislative purposes. Appellees assert, and we agree, that the laws advance the

State's interest in protecting and maintaining the integrity of the judiciary. As stated by the

---

[4] In dissent, Justice Danielson appears to maintain that some of these decisions are inapposite because the retirement provisions were set forth in a constitution rather than by legislative enactment. However, for purposes of equal protection, the analysis is the same whether the challenged law is a constitutional provision or a statute.

Supreme Court, "[i]t is an unfortunate fact of life that physical and mental capacity sometimes diminish with age." *Gregory*, 501 U.S. at 472. Thus, it is not irrational for the State to promote retirement at an advanced age in order to attain the highest possible standards for the judiciary. In the same vein, we also accept that encouraging voluntary retirement "eliminates the unpleasantness of selectively removing aged and disabled judges" through formal disciplinary proceedings. *Malmed*, 621 F.2d at 572; *see also Trafelet*, 594 F.2d at 628 (recognizing that the cumbersome process of individualized removal is unlikely to be used "except in the most extreme cases"); *Zielasko*, 693 F. Supp. at 586 (accepting as reasonable the justification that "mandatory retirement eliminates the unpleasant task of removing aged" and senile judges).

In addition, promoting voluntary retirement advances the State's legitimate interest in maintaining high performance for the judiciary by providing greater opportunities for younger attorneys to take the bench. Relatedly, retired judges are allowed to return to service as appointed judges without forfeiting retirement benefits. *See* Ark. Code Ann. §§ 16-10-902 & -903 (Repl. 2010).[5] Therefore, the retirement system also "substantially increases judicial manpower by bringing in younger judges while retaining the part-time services of willing and able retired judges." *Malmed*, 621 F.2d at 572; *see also Rubino*, 512 F.2d at 433 (recognizing the reasonableness of a mandatory age limitation at age seventy by encouraging younger attorneys with judicial aspirations).

---

[5] Section 4 of amendment 80 provides that the supreme court has the authority to temporarily assign judges.

In sum, we hold that the statutes are rationally related to the achievement of legitimate state objectives. This is the lowest form of constitutional scrutiny, and the statutory scheme in question easily passes the test. That the laws are underinclusive, by allowing a select few to briefly evade their strictures, provides no reason at all to hold that the statutes are unconstitutional. The General Assembly could well conclude, without being arbitrary, that allowing some to serve a short time to achieve eligibility for retirement benefits is but to place repose and confidence in the voters to not elect as a first-time judge one who is past the prime of his or her abilities. With that said, it is worth repeating the Court's admonition that "[w]hether or not individual judges may agree with this assessment, it is not for the courts to reject it." *Vance*, 440 U.S. at 106. The lines drawn by the General Assembly may not be flawless, but for purposes of equal protection, perfection is simply not required.

Under this point on appeal, appellants also assert that the statutory scheme lacks a rational basis because it limits judges who are elected later in life from obtaining full retirement benefits. Essentially, appellants complain that judges who serve longer terms in office receive greater benefits than those who serve less time on the bench. The entirety of the argument that appellants present on this point is confined to the statement that "[t]his discrimination is unrelated to any legitimate state interest." However, this, too, is a policy decision that was made by the General Assembly. In our view, it is far from irrational to base retirement benefits on length of judicial service. Appellants have failed in their burden of demonstrating that the laws lack a rational basis. We sustain the circuit court's decision that the statutes do not deny equal protection.

## VI. *Due Process*

In this argument on appeal, appellants contend that the forfeiture provisions appear to constitute an unconstitutional taking without due process because the forfeiture statutes can be read to provide that a judge would forfeit not only the payment of monthly retirement benefits, but also a judge's personal contributions paid into the system that were deducted from his or her salary. In response, appellees assert that no taking will occur in reliance on the affidavit of the executive director that appellees presented in support of their motion for summary judgment. In her affidavit, the executive director averred that, if a judge elects to remain in office past age seventy and suffers the forfeiture of monthly retirement benefits, the judge's personal contributions will be refunded to the judge, just as a judge's personal contributions are refunded if a judge never attains retirement eligibility in the first instance under Arkansas Code Annotated section 24-8-209(b).

It is the appellant's burden to demonstrate the existence of reversible error. *Burdine v. Ark. Dep't of Fin. & Admin.*, 2010 Ark. 455, 379 S.W.3d 476. In this case, appellants have failed in that burden because they have provided no argument showing that the circuit court erred in denying their due-process claim by relying on the executive director's assurance that contributions will be refunded if a judge remains in office past age seventy. We summarily affirm on this point.

## VI. *Constructive Discharge*

In this last issue, appellants cite *Sterling Drug v. Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988), for the proposition that a constructive discharge occurs when an employer intentionally renders an employee's working conditions intolerable and thus forces the

employee to leave the employment. Appellants assert that the arbitrary and capricious withdrawal of a judge's retirement benefits is an intentional act that effectively renders a judge's working conditions so intolerable that a judge is forced to surrender his or her occupation.

Appellants' attempt to create an analogy between statutes that encourage retirement and an intolerable work-place environment fails. The two are not comparable, as providing an incentive to retire at an advanced age is not the equivalent of a hostile work environment. Moreover, this court has steadfastly refused to consider an issue that is not supported by convincing argument or citation to authority. *Rose v. Ark. State Plant Bd.*, 363 Ark. 281, 213 S.W.3d 607 (2005). There is no merit to this argument.

Affirmed.

BAKER and HART, JJ., concur.

BRILL, C.J., and DANIELSON, J., dissent.

**KAREN R. BAKER, Justice, concurring.** I agree with the majority's opinion and analysis regarding Circuit Judge Michael Lander's petition for declaratory judgment and I join it.[1] I write separately to address issues raised in the dissenting opinions.

While I appreciate that everyone has different experiences that, at least to some extent,

---

[1]I would affirm the circuit court's decision as to the remaining appellants on the alternative basis that, because the court reached the right result as to the remaining appellants, with the exception of Judge Landers, the appellants clearly lacked standing to bring this action.

may color the lens through which we see any given situation, our personal opinions and beliefs cannot be substituted for the law. In announcing his retirement from the bench, Justice Danielson, in a public statement, said that if not for the statute at issue in this case "prohibiting [him] from seeking re-election without forfeiting [his] retirement benefits, [he] would continue to seek re-election as long as the good people of this State would have [him]." Clearly, Justice Danielson feels aggrieved by the statute we are tasked with ruling on in this case, which may explain the tone of his dissenting opinion.

Currently, thirty-three states have a mandatory judicial-retirement age, Arkansas is not among those states.[2] Campaigns have been mounted in recent years, in many of those thirty- three states, attempting to lift or raise the mandatory age through referendum or legislation, but almost all have failed. Over the last ten years, in Arizona, Hawaii, Louisiana, New York, and Ohio, attempts to lift or repeal mandatory retirement age for judges were unsuccessful. For the most part, where such efforts have succeeded it has been not to increase or repeal the mandatory retirement ages, but instead to let judges who have reached the mandatory retirement age serve out their existing terms. This was the case in Louisiana in 2003 and Texas in 2007. In Pennsylvania in 2001, a measure passed to allow judges to serve until the end of the year in which they turned seventy. However, in April of this year, voters in Pennsylvania rejected a constitutional amendment that would have raised that

---

[2]Judicial retirement in Arkansas is not mandatory, there is no age limit on service as a judge. States with no maximum age include: Arkansas, California, Delaware, Georgia, Idaho, Indiana, Kentucky, Maine, Mississippi, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Rhode Island, Tennessee, West Virginia, and Wisconsin.

state's mandatory judicial-retirement age from seventy to seventy-five.[3]  In most states, a judge must retire from the bench immediately upon attaining the mandatory retirement age. In the 2015 legislative session in Arkansas, an attempt to raise the age at which a judge could run to take office without the loss of retirement benefits from the current age seventy to age seventy-two was rejected by the legislature. Previous attempts to raise or remove the age at which Arkansas judges must retire or lose their judicial-retirement benefits have likewise failed.

Legal challenges to mandatory judicial-retirement ages have also been mounted in many states alleging age discrimination, equal-protection violations, and due-process violations that mirror the arguments made for reversal in this case. These challenges have universally failed.[4]  The United States Supreme Court addressed the issue twenty-five years ago in *Gregory v. Ashcroft*, 501 U.S. 452 (1991), holding that mandatory judicial retirement does not violate the Equal Protection Clause and is constitutional.

Chief Justice Brill's dissenting opinion states:

> The reality of the judicial-retirement system reveals the flawed nature of the false choice.  The result is confiscatory.  It harshly penalizes those judges who wish to exercise their right to run for office again and to continue to serve.

---

[3]This vote did not count and the issue will be on the ballot once again this November.

[4]*See Lerner v. Corbett*, 972 F. Supp. 2d 676 (M.D. Pa. 2013); *Zielasko v. Ohio*, 693 F. Supp. 577 (N.D. Ohio 1988) (upholding state constitutional provision precluding election or appointment of any judge beyond the age of 70); *State ex rel. Keefe v. Eyrich*, 489 N.E.2d 259 (Ohio 1986) (constitutional provision that persons 70 years of age or older could not be elected to judicial office did not violate seventy-year-old candidate's equal-protection rights); *Maresca v. Cuomo*, 105 A.D.2d 193 (N.Y. 1984) (upholding state constitutional provision requiring mandatory retirement of judges in the year they reach age 70; provision was supported by a rational basis and offended neither due process nor equal protection); *O'Neil v. Baine*, 568 S.W.2d 761 (Mo. 1978) (upholding mandatory retirement of state magistrate and probate judges at age 70).

. . . .

As for Judge Landers, when he is old and gray and full of sleep, and nodding by the fire, he can take down the decision of this court, and slowly read how he was forced to leave the bench and how the wishes of the citizens of six Arkansas counties were ignored.

First, I must disagree with Chief Justice Brill's contention that this statute "harshly penalizes" judges, and note that every sitting judge in Arkansas should have been aware of this law when they made the decision to seek judicial office. A judge's property interest in his or her retirement is limited by the condition that he or she be retired upon completion of the term in which he or she reaches age 70, precluding any claim that the statutory provision is confiscatory or that it violates procedural due process. *See Lerner*, 972 F. Supp. 676 (upholding state constitutional provision requiring judges to retire at age 70 as rationally related to ensuring a well-functioning state judiciary).

Second, Judge Landers is not being forced to leave the bench. Instead, Judge Landers has a choice to make. He can assume the office in 2017 and continue to serve for six years at his current salary of $160,000 at the end of which he can, if he chooses, run for judicial office again; or, he can retire at the end of December 2016 and draw the judicial-retirement benefit he has accrued during twelve years as a circuit court judge–approximately $61,440 annually for life. This is not a "Hobson's choice."[5]

Despite the tone of the dissenting opinions, the issue presented in this case is clear. At issue is what the people of Arkansas through their elected representatives have

---

[5] A "Hobson's choice" is defined as an apparent freedom to take or reject something offered when in actual fact no such freedom exists. *Webster's Third New International Dictionary* 1076 (1993).

SLIP OPINION

determined is the correct public policy for this state, and whether the circuit court erred in finding that the policy, embodied in Arkansas Code Annotated sections 24-8-215(c) and 24-8-710(b) (Repl. 2014), does not violate our state constitution.

The circuit court did not err.

**JOSEPHINE LINKER HART, Justice, concurring.** I would hold that none of the appellants have standing in this case. The majority correctly notes that standing is a threshold issue. *Grand Valley Ridge, LLC v. Metro. Nat'l Bank*, 2012 Ark. 121, 388 S.W.3d 24. The question of standing is a matter of law for this court to decide, and our review is de novo. *Bibbs v. Cmty. Bank of Benton*, 375 Ark. 150, 289 S.W.3d 393 (2008). Standing is an issue that can be raised on appeal, even if it is not the basis for the circuit court's ruling and no cross-appeal has been filed. *See Arnold v. State*, 2011 Ark. 395, 384 S.W.3d 488. It is appropriate to do so in this case.

Appellees raised standing in the circuit court and again raise it on appeal. I agree with how the majority characterizes the appellees' argument, and I find that the authority that the majority relies on, *Nelson v. Ark. Rural Med. Practice Loan & Scholarship Bd.*, 2011 Ark. 491, 385 S.W.3d 762, stands for the proposition that "a declaratory judgment will not be granted unless the danger or dilemma of the plaintiff is present, not contingent on the happening of hypothetical future events; the prejudice to his position must be actual and genuine and not merely possible, speculative, contingent, or remote." However, I cannot accept the majority's conclusion that we are barred from considering standing without a cross-appeal.

The majority's reasoning does not comport with our long-established practice of affirming the circuit court if it is correct for any reason—*Arnold v. State*, *supra*, is just such a case. *See also Shelter Mut. Ins. Co. v. Goodner*, 2015 Ark. 460, 477 S.W.3d 512; *Hurt-Hoover Invs., LLC v. Fulmer*, 2014 Ark. 461, 448 S.W.3d 696.

Further, the majority's reliance on *Gallus v. Alexander*, 371 Ark. 106, 263 S.W.3d 494 (2007), for the proposition that the issue of standing raised by an appellee is not preserved for appeal in the absence of a cross-appeal is clearly misplaced. In the first place, *Arnold v. State*, *supra*, a 2011 case, effectively overruled *Gallus*, a 2007 case, albeit sub silencio. Likewise, the previously mentioned right-for-any-reason cases show that this court's practice of affirming the circuit court on an alternative basis is still valid. Finally, *Gallus*'s legal underpinning does not support the proposition that the majority cites it for. The *Gallus* court purports to rely on *Lawson v. City of Mammoth Spring*, 287 Ark. 12, 696 S.W.2d 712 (1985), for the proposition that a cross-appeal was required before this court can consider an appellee's argument concerning standing. The *Lawson* court made no such holding. It merely recited that the City of Mammoth Spring had filed a cross-appeal, which it rejected; it never stated that filing a cross-appeal was mandatory.

Standing is determined from the pleadings. *See Reynolds v. Guardianship of Sears*, 327 Ark. 770, 940 S.W.2d 483 (1997). Here, the first amended complaint recited only that Judges Landers, Guthrie, and Johnson were of the age that would be affected by Arkansas Code Annotated sections 24-8-215(c) and 24-8-710(b), and they and would "like" to seek reelection. It further noted that Judge Looney "would have liked to seek reelection but chose not to do so."

At the hearing on the appellants' petition, no evidence was taken. I am mindful that, in arguing the case, appellants' counsel did mention that Judge Landers

> has filed for reelection, he is unopposed, so if somebody votes for the unopposed slate of candidates, he wins, he's in. And he would take office, I guess, a new term in January of 2017. So, I mean certainly I think he has standing.

He did not move to amend the pleadings or ask the trial court to take judicial notice of the fact that Judge Landers was eligible to take office if he chose to forfeit his retirement benefits. However, even assuming that he had, whether Judge Landers chooses to accept another term over his retirement benefits is still "merely possible, speculative, contingent, or remote" which cannot provide the necessary factual predicate for the grant of a declaratory judgment. *See Nelson v. Ark. Rural Med. Practice Loan & Scholarship Bd.*, *supra*.

I would dismiss this case because the litigants lacked standing.

**HOWARD W. BRILL, Chief Justice, dissenting.**

When you are old and gray and full of sleep,
And nodding by the fire, take down this book,
And slowly read, and dream of the soft look,
Your eyes had once, and of their shadows deep . . .

William Butler Yeats, "When You Are Old," lines 1–4.

I write a separate dissent to express other reasons why Arkansas Code Annotated section 24-8-710 (Repl. 2014) is invalid. Quoting from *Duncan v. Malcomb*, 234 Ark. 146, 148, 351 S.W.2d 419, 420 (1961), this court stated, "Of course, it is elementary that equity abhors forfeitures." This well-established maxim, although first developed in the area of creditors and mortgages, more broadly expresses fundamental principles of fairness that are applicable in the instant case.

Judge Landers graduated from law school and was admitted to the practice of law in 1971. He was elected as a circuit judge for the Thirteenth Circuit in 2004 and assumed the bench in January 2005. He was reelected to the bench in 2010. In March 2016, the voters of Calhoun, Cleveland, Columbia, Dallas, Ouachita, and Union Counties elected Judge Landers to another six-year term as circuit judge. The Arkansas Judicial Retirement System and its board of trustees state that Judge Landers has on January 2, 2017 a simple choice: assume the bench and forfeit his pension or leave the bench and keep his full pension. However, such an option is not a simple choice; it is a false choice. It is the classic Hobson's choice. In other words, it is not a real choice.

The statute mandating the forfeiture of judicial-retirement benefits, found at Arkansas Code Annotated section 24-8-710, provides as follows:

> (a) Any member who has a minimum of twenty (20) years of actual service may retire regardless of age, and any judge or justice who has served at least eight (8) years shall be eligible for benefits upon reaching age sixty-five (65).

> (b)(1) Any judge or justice who becomes seventy (70) years of age during a term of office to which he or she has been elected may complete the term without forfeiting his or her rights to retirement benefits under this section.

> (2)(A) Any judge or justice who is not eligible to retire at age seventy (70) may continue to serve as judge or justice until the completion of the term of office in which he or she has sufficient service to retire without losing his or her retirement benefits.

> (B) The judge or justice shall lose all retirement benefits if he or she serves beyond the end of the term needed to get sufficient service to retire.

> (3)(A) Otherwise, judges or justices must retire by their seventieth birthday or lose their retirement benefits.

(B) However, any active judge or justice who was serving prior to July 1, 1965, may continue to serve until any age and upon retirement shall be eligible to receive retirement benefits.

Under this judicial-retirement statute, Judge Landers's pension vested when he turned sixty-five years of age. That pension was based on his mandatory contributions and additional contributions from the state's fiscal resources. If he had retired or left the bench, he would have received the pension that he had earned.

In this case, the record indicates that never has a judge elected to forfeit the pension and continue on the bench. Instead, some have retired; some have gone back into the practice of law; some have become district judges. The reality of the judicial-retirement system reveals the flawed nature of the false choice. The result is confiscatory. It harshly penalizes those judges who wish to exercise their right to run for office again and to continue to serve.

The majority suggests several reasons that the legislature might have considered in adopting this retirement penalty. It suggests that the legislature might have intended to open judicial positions to younger lawyers. However, the legislature did not set a general age limit of sixty or sixty-five or seventy or seventy-five to serve. The majority suggests that the legislature might have intended to keep "senile" judges, those over seventy, off the bench. But the legislature did not adopt a competency test. Finally, the majority suggests that the legislature might be troubled by the continued physical ability of judges to serve. But the legislature did not adopt a physical test, similar to those for firefighters, police officers, and military personnel.

Most significantly, methods are in place to deal with judges who are mentally or physically unable to carry on their duties. In 1988, the people adopted Amendment 66, which created the independent Judicial Discipline and Disability Commission. The Commission may investigate whether a judge has a mental or physical disability that prevents the proper performance of judicial duties. Under the Constitution and the implementing statutes, Arkansas Code Annotated 16-10-401 to -411 (Repl. 2010), the Commission may recommend to this court that a judge "be retired." In addition, with the goal of assisting lawyers and judges at an earlier stage, in 2000 the Arkansas Supreme Court created the Arkansas Lawyer Assistance Program (ALAP), now known as Judges and Lawyer Assistance Program (JLAP). *See In Re: Establishment of the Arkansas Lawyer Assistance Program*, 343 Ark. App'x 780 (2000). (per curiam). With assured confidentiality, it provides immediate and continuing help to judges who suffer from physical or mental disabilities that result from disease, age, or other factors that impair their ability to serve.

In reality, these statutory provisions serve to punish judges who wish to continue on the bench. Thus, for the foregoing reasons, I would hold that Arkansas Code Annotated section 24-8-710 is an impermissible forfeiture and a unconstitutional requirement for judges. I would urge the legislature to find a more appropriate way, within the constitutional guidelines, to assure a judiciary with the requisite qualifications.

As for Judge Landers, when he is old and gray and full of sleep, and nodding by the fire, he can take down the decision of this court, and slowly read how he was forced to leave the bench and how the wishes of the citizens of six Arkansas counties were ignored.

DANIELSON, J., joins.

**PAUL E. DANIELSON, Justice, dissenting.** The General Assembly has declared that it is the public policy of this state to provide retirement benefits to its judges in order to "attract and retain highly capable members of the legal profession for service in the state judiciary." Ark. Code Ann. § 24-8-201 (Repl. 2014). The forfeiture provisions at issue in this case—Arkansas Code Annotated sections 24-8-215(c) and 24-8-710(b) (Repl. 2014)—achieve the exact opposite result. For all practical purposes, they guarantee the departure of the most experienced and seasoned members of the Arkansas judiciary—including, of course, the esteemed circuit judges who are the appellants in this case, three of whom were recently reelected by the voters in their districts and now face essentially forced retirement because the General Assembly believes it knows better than the voters. The forfeiture provisions accomplish this goal in a way that offends the Arkansas Constitution and the principle of equal protection. Accordingly, I dissent.

First, the majority correctly notes that, where the constitution itself prescribes in detail the qualifications for office, the General Assembly may not add to or diminish them. *See, e.g.*, *Mississippi Cty. v. Green*, 200 Ark. 204, 138 S.W.2d 377 (1940). Regulation on the subject inserted into the constitution operates as an implied restriction on the power of the legislature to impose additional qualifications. *See id.* Stated simply, "[w]here specific qualifications for office are listed in both the Arkansas Constitution and a statute, the constitution controls and voids the statute." *Daniels v. Dennis*, 365 Ark. 338, 340, 229 S.W.3d 880, 882 (2006). The majority likewise acknowledges that the General Assembly cannot do indirectly what the constitution prohibits it from doing directly. *See, e.g.*, *Gravett v. Villines*, 314 Ark. 320, 862 S.W.2d 260 (1993); *Cragar v. Thompson*, 212 Ark. 178, 205

S.W.2d 180 (1947). However, the majority fails to apply this principle and erroneously concludes, without any real analysis, that the forfeiture provisions do not impose an indirect qualification for holding judicial office. I cannot agree.

The maxim that the legislature cannot accomplish indirectly what it cannot accomplish directly is more than a mere saying. This firmly established principle operates as a restraint on the authority of the legislature, which, there can be no doubt, is a creature of the constitution, owes its existence to the constitution, and derives its powers from the constitution. *See Rison v. Farr*, 24 Ark. 161 (1865). In *Rison*, this court considered the constitutionality of a legislative enactment that required a voter to take an oath that, among other things, "he has not voluntarily borne arms against the United States or this state, nor aided, directly or indirectly, the so-called confederate authorities since the 18th day of April, 1864." *Id*. at 170. The court determined that this portion of the act was "repugnant to, and in open conflict with the constitution, and in every point of view [was] an entrenchment upon the rights secured by the fundamental law of this state, and [was] therefore absolutely null and void." *Id*. at 176. This was because the Arkansas Constitution fixed the qualifications for voters, "and these qualifications cannot be added to by legislative enactment." *Id*. at 170. Importantly, this court made clear that an indirect addition of a qualification is just as repugnant to the constitution as a direct one:

> [A]lthough this part of the law is professedly enacted, "To provide the manner of holding elections," it is, in effect, nothing but a prohibition upon the right to vote as secured by the constitution; and is of the same import as an affirmative provision that no person who has voluntarily borne arms against the United States, or this state, or aided the so-called confederate authorities, since the 18th day of April, 1864, shall be allowed to vote at any election in the state of Arkansas. And to admit that the legislature may do this, would be to declare that part of the constitution which defines the qualifications of a

voter, absolutely nugatory, and would turn section 2 of article IV, of our constitution into the merest nonsense. *And clearly, if the legislature cannot, by direct legislation, prohibit those who possess the constitutional qualification to vote, from exercising the elective franchise, that end cannot be accomplished by indirect legislation.* The legislature cannot, under color of regulating the manner of holding elections, which to some extent that body has a right to do, impose such restrictions as will have the effect to take away the right to vote as secured by the constitution.

*Id.* at 172 (emphasis added).

Similarly, if the legislature cannot, by direct legislation, prohibit those who possess the constitutional qualifications to hold judicial office from doing so, that end cannot be accomplished by indirect legislation. The legislature cannot, under color of regulating judicial-retirement benefits, which to some extent that body has a right to do, impose such restrictions as will have the effect of denying eligibility for office. *Rison* is controlling, and this court is not free to ignore a legislative overreach simply because the majority likes the result. The forfeiture provisions are repugnant to the constitution because they indirectly add a qualification for holding judicial office not found in amendment 80, section 16.

Moreover, the majority is incorrect in stating that a judge may "freely" seek reelection and serve in office despite the application of the forfeiture provisions. The majority is likewise wrong in suggesting that retirement benefits are entirely a matter of grace bestowed by the General Assembly. It is settled Arkansas law that a retirement allowance financed over a period of years by the joint contributions of the employer and the employee represents compensation rather than a mere gratuity. *See, e.g.*, *Jones v. Cheney*, 253 Ark. 926, 489 S.W.2d 785 (1973) (citing *Daggett v. St. Francis Levee Dist.*, 226 Ark. 545, 291 S.W.2d 254 (1956)). As such, it is a vested right not subject to impairment. *See id.* To

forfeit that right is not free.[1]  Furthermore, the proposition that the forfeiture provisions merely govern eligibility for retirement benefits misses the point entirely; when a judge is vested in the retirement system, his or her eligibility for retirement benefits has already been established, not to mention his or her eligibility to hold judicial office.

Second, as the majority acknowledges, equal protection requires "that classification rest on real and not feigned differences, that the distinctions have some relevance to the purpose for which the classification is made, and that their treatment be not so disparate as to be arbitrary."  *Rose v. Ark. State Plant Bd.*, 363 Ark. 281, 293, 213 S.W.3d 607, 617 (2005).  The forfeiture provisions simply do not pass this test.  They do not prevent older people in general from serving as judges; rather, they prevent older people *with experience as judges* from *continuing* to serve as judges.

This is so because a person can run for and be elected as a judge for the first time after attaining the age of seventy.  Pursuant to sections 24-8-215(d) and 24-8-710(a), a judge is not eligible for retirement benefits until he or she accumulates eight years of actual service.  Further, under sections 24-8-215(c)(2)(A) and 24-8-710(b)(2)(A), a judge who is not eligible to retire at age seventy may continue to serve, without forfeiting retirement benefits, until the completion of the term of office in which he or she has sufficient service to retire.  Consequently, a supreme court justice or court of appeals judge who takes office for the first time at seventy years of age or even older is entitled to serve a full eight-year term

---

[1]The majority seems to suggest that, because the appellants were aware of the forfeiture provisions when they were elected, they are now estopped from challenging their constitutionality.  There is no support in the law for this notion.

before being required to retire or forfeit benefits. A circuit judge elected at that age is entitled to serve two full six-year terms—a total of twelve years—before being required to retire or forfeit benefits. Alternatively, a person may serve one six-year term as a circuit judge and one eight-year term as a supreme court justice or court of appeals judge—a total of fourteen years—before being required to retire or forfeit benefits. Again, there is no age limit on taking the bench as a first-time judge.

Clearly, the forfeiture provisions result in disparate treatment between those who are elected at a relatively early age and those who are elected later in life. I recognize that "perfection is by no means required" on rational-basis review. *Vance v. Bradley*, 440 U.S. 93, 108 (1979) (quoting *Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*, 361 U.S. 376, 385 (1960)). However, the forfeiture provisions are not merely underinclusive or mathematically imprecise. The distinction between those elected earlier in life and those elected later in life has no relevance to the purpose for which the classification was made, and the treatment of those two groups is so disparate as to be arbitrary. *See Rose*, 363 Ark. 281, 213 S.W.3d 607. The law allows an eighty year old to take the bench for the first time and, in certain circumstances, to serve until he or she is ninety-four years old. The fact that the law also insists that our most experienced judges retire at age seventy demonstrates an obvious equal-protection problem.[2]

---

[2]Further evidence of the arbitrariness of the forfeiture provisions is that they do not apply to district judges. *See* 2007 Ark. Acts 177 (abolishing Arkansas District Judge Retirement System and transferring its powers, duties, and plan liabilities to Arkansas Public Employees' Retirement System). This distinction between district judges and all other judges likewise has no relevance to the purpose for which the classification was made.

In addition, I must point out a glaring inconsistency in the majority opinion. On the one hand, it asserts that the forfeiture provisions do not impose an additional qualification for holding judicial office because they do not impose a mandatory retirement age; instead, they only *encourage* retirement by regulating eligibility for retirement benefits.[3] On the other hand, in its analysis of the equal-protection issue, the majority cites several cases addressing the constitutionality of provisions imposing a mandatory retirement age. *See, e.g.*, *Gregory v. Ashcroft*, 501 U.S. 452 (1991) (constitutional provision requiring judicial retirement at age seventy); *Vance*, 440 U.S. 93 (legislation mandating retirement of participants in the Foreign Service retirement system at age sixty); *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307 (1976) (statute requiring retirement of uniformed police officers at age fifty). The majority's attempt to take two opposing positions in the same opinion highlights the flaws in its reasoning. The majority cannot have it both ways. If the forfeiture provisions impose a mandatory retirement age, they violate amendment 80 by adding a qualification for holding judicial office. If they do not impose a mandatory retirement age, but merely condition eligibility for benefits on retirement by age seventy, they violate equal protection by resulting in disparate treatment.

In this same vein, the majority is simply wrong in its misleading implication that other courts have unanimously upheld judicial-retirement provisions like those at issue here. First, I can find no other case addressing a forfeiture provision promoting judicial retirement

---

[3]The legislature apparently believes that the forfeiture provisions do more than just encourage retirement: Arkansas Code Annotated section 24-8-224(a) explicitly characterizes the forfeiture provisions as imposing a "mandatory retirement age."

at a certain age; it appears that Arkansas stands alone in conditioning eligibility for judicial–retirement benefits on retirement by a certain age. Second, the vast majority of the cases relied on by the majority, and by Justice Baker in her concurrence, involved *constitutional* provisions imposing a mandatory retirement age. *See Gregory*, 501 U.S. 452 (addressing Art. V, § 26 of the Missouri Constitution); *Hatten v. Rains*, 854 F.2d 687 (5th Cir. 1988) (addressing Art. V, § 1-a of the Texas Constitution); *Malmed v. Thornburgh*, 621 F.2d 565 (3d Cir. 1980) (addressing Art. V, § 16(b) of the Pennsylvania Constitution); *Rubino v. Ghezzi*, 512 F.2d 431 (2d Cir. 1975) (addressing Art. VI, § 25 of the New York State Constitution); *Lerner v. Corbett*, 972 F. Supp. 2d 676 (M.D. Penn. 2013) (addressing Art. V, § 16(b) of the Pennsylvania Constitution); *Zielasko v. Ohio*, 693 F. Supp. 577 (N.D. Ohio 1988) (addressing Art. IV, § 6(C) of the Ohio Constitution); *State v. Eyrich*, 489 N.E.2d 259 (Ohio 1986) (addressing Art. IV, § 6(C) of the Ohio Constitution); *Maresca v. Cuomo*, 483 N.Y.S. 2d 690 (N.Y. App. Div. 1984) (addressing Art. VI, § 25(b) of the New York State Constitution); *Aronstam v. Cashman*, 325 A.2d 361 (Vt. 1974) (addressing Ch. II, § 28c of the Vermont Constitution). By contrast, the forfeiture provisions at issue in this case are *acts of the legislature*, and they actually conflict with our constitution, as previously explained in this opinion.

The forfeiture provisions are unconstitutional. They conflict with amendment 80 by imposing an additional qualification for holding judicial office, and they suffer the added infirmity of violating equal protection. Together, these provisions constitute one of the most blatantly arbitrary, discriminatory, and punitive laws that I have ever seen. It is worth noting that the forfeiture provisions do not apply to members of the legislative or executive

branches or to other public officials; they apply only to certain judges. I do not profess to know what happens to a society that runs off its best and brightest public servants, but it cannot be good, and it certainly is not rational.

To accept the argument that the forfeiture provisions merely *encourage* retirement at age seventy—or that they do anything short of requiring the retirement of the most experienced members of our judiciary—is to indulge a complete and total fiction. *Encouragement* is not an accurate descriptor of what the forfeiture provisions accomplish. What they actually convey is: leave or we'll steal your wallet. The assertion that the forfeiture provisions do not impose a qualification for office because they only govern eligibility for retirement benefits is a similar pretense. The fact of the matter is that the judges who are the appellants in this case are eligible for retirement, and this law makes them ineligible for doing something that everyone agrees they have an absolute constitutional right to do. Retirement benefits are not a "matter of grace"; once they are earned and vested, they represent compensation rather than a mere gratuity. *See Jones*, 253 Ark. 926, 489 S.W.2d 785. Therefore, the legislature is wrong in its apparent belief that whatever it giveth, it can taketh away. Maybe it is because I am seventy years old myself, but I think that the act of grace here is the long tenure of public service that these judges have given the State of Arkansas, and to them I say thank you.

In my opinion, the majority's analysis sets a dangerous precedent that will lead to unintended consequences. Namely, the legislature could impose any number of requirements for holding judicial office under the guise of regulating judicial-retirement benefits. It could go so far as to condition eligibility for judicial-retirement benefits on

having relevant preelection experience—for instance, by requiring twenty years' experience as a practicing lawyer and ten jury trials under one's belt. This would quite obviously constitute an additional qualification, but it would nonetheless pass constitutional muster pursuant to this court's decision today. Going forward, the majority's ill-advised acceptance of the pretenses upon which the forfeiture provisions rest gives the legislature free rein to do indirectly what it cannot do directly. Today it is forced judicial retirement at age seventy, but I can think of a host of other ways in which the analysis will be used to force a class of people to do or not do something that they have every right to do.

The General Assembly may consider me aged and possibly even senile, but I can still spot a constitutional violation when I see one.

BRILL, C.J., joins in this dissent.

*Baker, Schulze & Murphy*, by: *J.G. "Gerry" Schulze*, for appellants.
*Leslie Rutledge*, Att'y Gen., by: *Colin R. Jorgensen*, Ass't Att'y Gen., for appellee.